NORA CROWE, as Administratrix, etc., of MICHAEL CROWE, Deceased, Plaintiff, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Defendant.

*Railroad employee — personal injury — negligence — movement of cars, in a track yard, without warning — a risk of the employment.*

In an action brought against a railroad company to recover the damages resulting from the death of one of its employees, the evidence showed that the deceased, who had been employed as a track repairer in a railroad yard eight or ten years, while returning to the tool house after completing certain work on the tracks, in the night-time, bearing a lantern, was struck and killed by a slowly moving coal car on a switch track; that there was no light on this car and no warning was given of its approach, but the absence of a light and warning was usual in such cases and was to be expected on that track, with which practice the deceased was familiar; it did not appear whether the deceased looked to see if the car was approaching. The plaintiff was nonsuited.

*Held,* that the plaintiff failed to prove either freedom from contributory negligence on the part of the deceased, or negligence on the part of the defendant; and that the nonsuit was proper

A railroad company is not required to place a light upon each car moved in making up or distributing trains in a track yard, nor to have a man accompany or precede such cars to give warning of their approach.

The frequent passage of cars, without notice of their approach, is a risk incident to employment in a railroad track yard.

MOTION by the plaintiff, Nora Crowe, as administratrix, etc., of Michael Crowe, deceased, for a new trial upon exceptions ordered to be heard at the General Term in the first instance, on the direction of a nonsuit at the Monroe Circuit on the 4th day of June, 1889.

*Eldridge L. Adams,* for the plaintiff.

*Edward Harris,* for the defendant.

LEWIS, J.:

This action was brought to recover damages sustained by the next of kin of the deceased by his death caused by the alleged negligence of the defendant. The deceased was, at the time of receiving the injuries which caused his death, working for the defendant as one of a gang of men employed in the defendant's yards in the city of Rochester, repairing car tracks. He had been thus employed by the

defendant in said yards for eight or ten years immediately prior to the time of his death. Michael Carmody was the foreman of the gang, and as such had charge of all the repairs in the section embracing this yard, hiring and discharging the men working under him. He hired Crowe. Carmody and his men were called out about eleven o'clock of the night of the 2d of February, 1887, to repair a broken frog in the yard mentioned. There were some forty tracks in said yard, and at the place of the accident there were five parallel tracks; four of them were known as tracks number one, two, three and four, numbered from the south northerly, and were known as the main tracks. There was in addition a fifth track north of track number four, and known as a switch track. It took the men about two hours to make the repairs, and during that time the traffic on tracks four and five was suspended. Carmody and the deceased each held a lighted lantern in his hand for the purpose of furnishing light for the workmen during the progress of the work. When the work was sufficiently advanced to permit the track to be used, a switch engine which had been standing upon track number three waiting for the repairs to be made was signalled and passed over onto track five with some cars. The men stepped aside to allow them to pass, when they resumed the work; and when it was completed the proper signals were given and the business in the yard was resumed. These signals were given in the presence of the men composing the gang, including Crowe, and he must have known of them and of the passage of the engine and cars. A number of the men called as witnesses testified that they knew that the cars were being moved along track five at the time the work was finished. The business of this switch engine was to shunt cars on the different tracks in the yard, including track five, and when it passed over onto track five on this occasion it proceeded to handle the cars upon track five, pushing or kicking them along said track past the place where the repairs had been made; the cars after being thus kicked were left to proceed by their own momentum. When the men had completed the repairs they gathered up their tools for the purpose of taking them to the tool house, which was situated north of track five and 414 feet east of the frog. In going to the tool house they had to cross track five. There was ample room for them to walk north of said track. The space between tracks four and

five was about seven feet wide. Crowe was the last man to leave the work. He was immediately behind James Knight, one of the gang. He had his lamp in his hand. Knight stopped just as he had crossed track five to pick up a tool he had dropped. He testified that Crowe was immediately behind him and that when Crowe reached the middle of track five he was struck and knocked down and killed by a coal car that was moving slowly eastwardly on track five. Knight did not see the car until it struck Crowe; whether he looked to see if it was approaching, does not appear. Aided by the light of his lantern, Crowe unquestionably would have seen the car if he had looked in its direction. The car had no light upon it, and no notice was given of its approach. There was considerable noise at the time, caused by the moving of trains. Crowe knew from the manner in which business had been done in the yard that cars at any moment were likely to pass along on track five in the same manner as this one did, at the time of the accident. He knew that it was not customary to give any warning of their approach, and that it was not the practice to have lights upon them; and that it required constant watchfulness and vigilance on his part when moving about the yard, to avoid a collision with the cars. Attempting to cross the track under such circumstances without looking to see if a car was approaching, was a surprisingly careless and negligent act. The plaintiff failed to prove that the deceased was free from negligence contributing to his injuries. She also failed to show any negligence on the part of the defendant. The business in the yard was being conducted in the same manner that it had been for years.

It is suggested by the plaintiff that there should have been a light placed upon the car. This contention would require a light to be placed upon each and every car being moved in such a yard as this. The time consumed in handling such a large number of lamps and the number of men that would be required to do the work, would make such a rule obviously impracticable. There is no suggestion that any railroad company ever attempted to adopt such a rule, or that it would be practicable if adopted. To require the company to have a man upon each car, or a man to precede each car to announce its approach, in such a yard as this, would be impracticable. Great care and precaution are required on the part of railroad companies

when they are moving cars in places where the general public have a right to pass, to in some manner announce their approach; but a different rule obtains in the companies' yards, where cars are being distributed and trains made up. The employees about such yard understand the situation ; they know the manner of doing the business therein, that cars frequently pass along without notice of their approach, and they assume the risks incident to the business as thus conducted.

Whether the foreman left the work when it was completed or a few minutes before, is not important. It was completed when Crowe left, and he understood the situation. The men were properly protected while the work was progressing by the two lighted lanterns heretofore mentioned. It is suggested that the work was not completed until the men had arrived at the tool house with their tools, and that until then they were entitled to some special protection to which they might not be entitled perhaps when engaged in other business about the yard. No reason is suggested for such a rule, and none occurs to us. They were entitled when going to the tool house to the same protection and care on the part of the company to which they were entitled when moving about the yard performing their ordinary daily business.

There was no question for the jury. The nonsuit was properly granted, and the motion for a new trial should be denied, and judgment ordered for the defendant upon the nonsuit.

DWIGHT, P. J., MACOMBER and HAIGHT, JJ., concurred.

Plaintiff's motion for a new trial denied, with costs, and judgment ordered for the defendant on the nonsuit.