MARIA MOCCIA, as Administratrix, etc., of FELIX MOCCIA, Deceased, Appellant, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

*Negligence — an employee cleaning off snow from the tracks of a railroad yard run into by a car shunted upon them.*

In an action brought to recover damages resulting from the death of the plaintiff's intestate it appeared that the defendant, a railroad corporation, maintained a yard used to make up trains, the method adopted being to push each car on its proper track, and detach it, allowing it to run by its own momentum until it joined the other cars on that track; that while a detached car was thus proceeding, the brakeman in charge of it saw the intestate, who was employed by the defendant in removing snow from the switches in the yard, standing on the track, and shouted to him, but was unable to attract his attention; that he also attempted to apply the brake, which was apparently in good order, but was unable to prevent the car from running over the intestate.

It did not appear that there was anything to obstruct the intestate's view of the car or to prevent him from hearing the brakeman's warning. There was no evidence that the brakeman or any of the defendant's other employees were negligent or that any better method of making up trains could have been adopted, and, so far as appeared, the brakeman's inability to stop the car resulted from the slippery condition of the tracks.

*Held,* that the court properly dismissed the complaint.

O'BRIEN, J., dissented.

APPEAL by the plaintiff, Maria Moccia, as administratrix, etc., of Felix Moccia, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 23d day of June, 1899, upon the dismissal of the complaint by direction of the court after a trial before the court and a jury at the New York Trial Term, and also from an order entered in said clerk's office on the 26th day of June, 1899, denying the plaintiff's motion for a new trial made upon the minutes.

*Morris Cukor,* for the appellant.

*Charles C. Paulding,* for the respondent.

INGRAHAM, J. :

The plaintiff's intestate was employed by the defendant at the Melrose yard located in the city of New York, and was on the morning of January 1, 1898, engaged in cleaning the switches in the yard of snow. The Melrose yard commences at about One Hundred and Forty-ninth street and runs to One Hundred and

Sixty-first street.   There are in this yard about 250 tracks and a large number of switches.   The yard was used in making up the trains for the defendant's road, and the method adopted seems to have been to separate the cars and then push each car upon a separate track.   The car being in charge of a brakeman is then run by its own momentum until it is joined to other cars.   On this morning in question a train, consisting of four cars under the charge of an engineer, conductor and brakeman, was brought to the yard for the purpose of distributing the cars.   The rear car was detached from the others and was shoved upon one of the tracks.   It was a very slippery morning.   The brakeman in charge of the car as it was being pushed back was at his post.   As the car was shoved back he saw the deceased upon the track, hallooed at him, but the deceased took no notice.   The brakeman attempted to apply the brake, which was apparently in good order, but was unable to stop the car, and it ran over the deceased, killing him.   There was nothing to obstruct the view of the car.   So far as appears, there was nothing to prevent the deceased from hearing the shout of the brakeman.   The deceased took no notice of the car and made no effort to get out of its way.   No reason is shown why the deceased failed to hear the warning of the brakeman, nor is there evidence to show that such a signal was not sufficient to protect the deceased if he had paid attention to it.   The method adopted by the defendant in making up the trains had been in use for many years, and there is no evidence to show that any accident had resulted from the method adopted or that any other method could have been adopted which would have been safer or have better protected the men at work in the yard, or that any rules or regulations could have been provided by the defendant which would have prevented the accident.   There appears to have been no negligence on the part of the brakeman or any of the other employees which caused the accident.   So far as appears, the inability of the brakeman to stop the car was the result of the slippery condition of the track, as no other cause is alleged or shown.   When the deceased accepted employment in this yard he must have known the object for which the yard was used and the methods adopted by the defendant in making up its trains, and he must have accepted the risks incident to an employment in such a yard under the conditions actually existing.   It does

not appear that there were any other trains in the neighborhood, or anything at that time to obstruct the deceased's view of the train or to distract his attention, so that by ordinary observation he would not have been enabled to see the approaching car, or that ordinary attention to the surrounding conditions would not have enabled him to hear the warning which was given. From this state of facts it would seem to be impossible to say that there was evidence of negligence on the part of the defendant. The case is entirely different from that of *Doing* v. *N. Y., Ontario & Western R. Co.* (151 N. Y. 585). In that case the plaintiff's intestate was working in a shop with closed doors. The agents of the company, desiring to place a car loaded with scrap iron near the door of this shop, started the car on its way to the shop at a speed so great that, notwithstanding the efforts of the brakeman upon the car, it crashed into the shop and killed the plaintiff's intestate while at work. The court held that, upon the evidence in that case, the jury could have found that the practice of kicking or shunting cars upon the tracks in the direction of the doors of the repair shop was known to the defendant, and that the danger to be apprehended from such practice was so obvious that the defendant, in the proper discharge of the duties which it owed to its employees, was bound to guard against it by proper rules and regulations, so far as that was reasonable and practicable. There was also evidence in that case to show that the brake was out of order, or would not work, and the reversal was put on the ground that it was a question whether the men were using a car with a defective brake, or if the men were acting without any known rule or regulation, and simply following a dangerous practice sanctioned by time and custom, the result might be imputed to the neglect of the defendant in omitting to change the method of doing the work and adopting a safer one; and that the plaintiff had no means of guarding against such a peril, as it was impossible for him to see the approaching car, even if the work at which he was employed would permit him to be on the lookout, since the doors were closed and there were no windows. Here the facts are entirely different. The deceased was not employed to work in a shop with closed doors, and where he could not anticipate that a car would be shoved in upon him. He was at work upon switches over which cars were constantly passing, and it was obvious that his safety required him to keep a

lookout and watch for the signals of approaching cars.    In the other case it was obviously a dangerous practice to shove cars toward a shop filled with workmen with such force that the car would break into the shop, and thus endanger the men therein employed.    In this case it does not appear that this car was moved with any greater force than was necessary to accomplish the object in view, viz., moving this car down to the other cars stored in the yard.    The element of danger that the defendant was bound to guard against in the case cited was that there was a shop in which men were working in the neighborhood and that the cars propelled toward the shop without being sufficiently controlled would endanger those in the shop if the brake did not work.    Here there was no such danger apparent, and the fact that the car was not stopped does not appear from the evidence to have been caused by the failure of the brake to work, but by the condition of the track.    This case is unlike *Crowe* v. *N. Y. C. & H. R. R. R. Co.* (70 Hun, 37).    It is also claimed that the brakeman was incompetent, but there is no evidence to support such a finding. The brakeman testified that at this time he was a brakeman and had been steadily working as such for about two weeks, but that prior to the first of January he had been in the defendant's employ for a year or more, switching and braking; that he has been in this yard all this time.    There was not a particle of evidence to show that he was not a competent man or that he did not at that time do all that could be done to stop the car and prevent the accident.    There is nothing to justify a charge that the company had been negligent in employing him or continuing him in its employment, as he had not been shown to be inattentive to his duties or negligent before the time of this accident.

We think, therefore, that there was nothing to show negligence on the part of the defendant, but, on the contrary, the accident appears to have been caused by a failure of the deceased to use ordinary care in the performance of the work in which he was engaged.

It follows that the judgment was right and should be affirmed, with costs.

Van Brunt, P. J., and McLaughlin, J., concurred; O'Brien, J., dissented.

Judgment affirmed, with costs.