MOCCIA v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, First Department. December 8, 1899.)

MASTER AND SERVANT — INJURY TO SERVANT — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE—EVIDENCE.

Decedent was employed in defendant's train yard to clean snow from its switches. In making up trains in the yard it was usual to start a car in charge of a brakeman towards others to which it was intended to be coupled; the car running by its own momentum. This method had been

used for many years, and there was apparently no safer one known, to prevent accidents. A car, started thus, on a very slippery morning, approached a switch where deceased was at work. The brakeman, who was at his post, shouted at him, but without effect. He then attempted to apply the brake, which was in apparent good order; but he was unable to stop the car, which ran over and killed deceased. There was nothing to obstruct his view of the car, or distract his attention so as to prevent him from hearing the brakeman's cry; and the warning did not appear to have been insufficient, nor the brakeman incompetent to handle the car, which was not shown to be moving with greater force than was necessary to make the connection. *Held* not to show defendant's negligence, but tending to show decedent's failure to use ordinary care in the performance of his work.

O'Brien, J., dissenting.

Appeal from trial term, New York county.

Action by Maria Moccia, as administratrix of Felix Moccia, deceased, against the New York Central & Hudson River Railroad Company, for the death of plaintiff's intestate. From a judgment for defendant, dismissing the complaint, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Morris Cukor, for appellant.
Charles C. Paulding, for respondent.

INGRAHAM, J. The plaintiff's intestate was employed by the defendant at the Melrose Yard, located in the city of New York, and was on the morning of January 1, 1898, engaged in cleaning the switches in the yard of snow. The Melrose Yard commences at about 149th street, and runs to 161st street. There are in this yard about 250 tracks, and a large number of switches. The yard was used in making up the trains for the defendant's road, and the method adopted seems to have been to separate the cars, and then push each car upon a separate track. The car, being in charge of a brakeman, is then run by its own momentum until it is joined to other cars. On this morning in question a train consisting of four cars, under the charge of an engineer, conductor, and brakeman, was brought to the yard for the purpose of distributing the cars. The rear car was detached from the others, and was shoved upon one of the tracks. It was a very slippery morning. The brakeman in charge of the car as it was being pushed back was at his post. As the car was shoved back, he saw the deceased upon the track, and hollowed at him, but the deceased took no notice. The brakeman attempted to apply the brake, which was apparently in good order, but was unable to stop the car, and it ran over the deceased, killing him. There was nothing to obstruct the view of the car. So far as appears, there was nothing to prevent the deceased from hearing the shout of the brakeman. The deceased took no notice of the car, and made no effort to get out of its way. No reason is shown why the deceased failed to hear the warning of the brakeman; nor is there evidence to show that such a signal was not sufficient to protect the deceased, if he had paid attention to it. The method adopted by the defendant in making up the trains had been in use for many years, and there is no evidence to show that any

accident had resulted from the method adopted, or that any other method could have been adopted which would have been safer, or have better protected the men at work in the yard, or that any rules or regulations could have been provided by the defendant which would have prevented the accident. There appears to have been no negligence on the part of the brakeman or any of the other employés which caused the accident. So far as appears, the inability of the brakeman to stop the car was the result of the slippery condition of the track, as no other cause is alleged or shown. When the deceased accepted employment in this yard, he must have known the object for which the yard was used, and the methods adopted by the defendant in making up its trains, and he must have accepted the risks incident to an employment in such a yard under the conditions actually existing. It does not appear that there were any other trains in the neighborhood, or anything at that time to obstruct the deceased's view of the train, or to distract his attention, so that by ordinary observation he would not have been enabled to see the approaching car, or that ordinary attention to the surrounding conditions would not have enabled him to hear the warning which was given. From this state of facts, it would seem to be impossible to say that there was evidence of negligence on the part of the defendant. The case is entirely different from that of Doing v. Railroad Co., 151 N. Y. 585, 45 N. E. 1028. In that case the plaintiff's intestate was working in a shop with closed doors. The agents of the company, desiring to place a car loaded with scrap iron near the door of this shop, started the car on its way to the shop at a speed so great that, notwithstanding the efforts of the brakeman upon the car, it crashed into the shop, and killed the plaintiff's intestate while at work. The court held that upon the evidence in that case the jury could have found that the practice of kicking or shunting cars upon the tracks in the direction of the doors of the repair shop was known to the defendant, and that the danger to be apprehended from such practice was so obvious that the defendant, in the proper discharge of the duties which it owed to its employés, was bound to guard against it by proper rules and regulations, so far as that was reasonable and practicable. There was also evidence in that case to show that the brake was out of order, or would not work. And the reversal was put on the ground that it was a question whether the men were using a car with a defective brake; or if the men were acting without any known rule or regulation, and simply following a dangerous practice sanctioned by time and custom, the result might be imputed to the neglect of the defendant in omitting to change the method of doing the work and adopting a safer one, and that the deceased had no means of guarding against such a peril, as it was impossible for him to see the approaching car, even if the work at which he was employed would permit him to be on the lookout, since the doors were closed, and there were no windows. Here the facts are entirely different. The deceased was not employed to work in a shop with closed doors, and where he could not anticipate that a car would be shoved in upon him. He was at work upon switches over which cars were constantly passing, and it was obvious that

his safety required him to keep a lookout, and watch for the signals of approaching cars. In the other case it was obviously a dangerous practice to shove cars towards a shop filled with workmen, with such force that the car would break into the shop and thus endanger the men therein employed. In this case it does not appear that this car was moved with any greater force than was necessary to accomplish the object in view, viz. moving this car down to the other cars stored in the yard. The element of danger that the defendant was bound to guard against in the case cited was that there was a shop in which men were working in the neighborhood, and that the cars, propelled towards the shop without being sufficiently controlled, would endanger those in the shop, if the brake did not work. Here there was no such danger apparent, and the fact that the car was not stopped does not appear from the evidence to have been caused by the failure of the brake to work, but by the condition of the track. This case is unlike Crowe v. Railroad Co., 70 Hun, 37, 23 N. Y. Supp. 1100.

It is also claimed that the brakeman was incompetent, but there is no evidence to sustain such a finding. The brakeman testified that at this time he was a brakeman, and had been steadily working as such for about two weeks, but that prior to the 1st of January he had been in the defendant's employ for a year or more switching and braking; that he has been in this yard all this time. There was not a particle of evidence to show that he was not a competent man, or that he did not at that time do all that could be done to stop the car and prevent the accident. There is nothing to justify a charge that the company had been negligent in employing him or continuing him in its employment, as he had not been shown to be inattentive to his duties or negligent before the time of this accident. We think, therefore, that there was nothing to show negligence on the part of the defendant, but, on the contrary, the accident appears to have been caused by a failure of the deceased to use ordinary care in the performance of the work in which he was engaged.

It follows that the judgment was right, and should be affirmed, with costs. All concur, except O'BRIEN, J., who dissents.