of Industry was organized under chapter 319, p. 447, Laws 1848. It may be upon another trial that proof may be elicited showing that the society was created by virtue of some other act of the Legislature.

It is claimed that the bequest is not to the corporations designated, but to the individuals who are to use the fund as trustees for the purpose of procuring masses and prayers to be said for the soul of the testatrix. The language of the bequest seems to contravene this interpretation. The individuals named take the property in trust "for the use and benefit" of the two institutions, and the bequest is to "each institution to them equally." The bequest was intended to be a charitable one for the aid of the two societies, and each was charged with the obligation of performing the prescribed religious service. The trustees were to receive this money, but no active duty was imposed upon them in connection with the fulfillment of the trust; and they were not charged with the performance of the religious rite which the testatrix intended to couple with the legacy to the two corporations. The trusteeship, if such it may be dignified, is a passive one, with no authority in the trustees to invest the fund and keep it intact, or to collect the income or to pay over any portion of it, or the principal, to the two corporate beneficiaries.

No kindred question was decided in Allen v. Stevens, 161 N. Y. 122, 55 N. E. 568, cited on the brief of respondents' counsel. In that case the residuary estate was willed to the designated trustees, and they were charged with the duty "of founding, erecting, and maintaining Graves Home for the Aged." The active management of the property was intrusted to the trustees, with authority to rent or sell the real property, to employ agents, etc. Their custody of the property was complete, and their authority in its management unrestricted. The court held that the beneficiary was indefinite; but the bequest did not fail in any event, because of chapter 701, p. 1748, Laws 1893.

By section 73 of the real property law (chapter 547, p. 570, Laws 1896) a passive trust vests no title in the trustee. So by section 77, where the trustee is not "empowered to receive the rents and profits," no estate vests in him. The estate passes directly to the heirs or devisees, "subject to the execution of the power." By analogy the present bequest, if valid, would go to the beneficiary, accompanied with the responsibility of saying "masses and prayers for the soul of the testatrix." Genet et al. v. Hunt et al., 113 N. Y. 158–168, 21 N. E. 91; Bindrim v. Ullrich, 64 App. Div. 444–447, 72 N. Y. Supp. 239.

The decree should be reversed, and a new trial ordered in Surrogate's Court, with the costs and disbursements of both parties on this appeal payable out of the fund. So ordered. All concur.

(112 App. Div. 818)

RICH v. PENNSYLVANIA R. CO.

(Supreme Court, Appellate Division, Fourth Department. May 2. 1906.)

MASTER AND SERVANT—INJURIES TO SERVANT—EVIDENCE—SUFFICIENCY.

    In an action by a servant for injuries caused by being struck by a switch engine while working upon a track, evidence *held* insufficient to support a verdict for plaintiff.

    McLennan, P. J., dissenting.

Appeal from Trial Term, Cattaraugus County.

Action by Frank Rich against the Pennsylvania Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

A. J. Hastings, for appellant.

Henry Donnelly, for respondent.

NASH, J. The plaintiff was injured on the 10th of December, 1903. He was employed by the defendant in its yards at Olean for 14 months prior to the accident. At the time he was hurt he was engaged in digging ice from between the rails and the planks on what is known as "First Street Crossing." The passenger station is about 400 feet east of the crossing. There are switching tracks and yards on both sides of First street. Yard engines pass over the street 50 to 70 times a day in 12 hours. As stated by the plaintiff, engines were passing by all the time. "Couldn't tell how many went by while I was working there. I knew I had to look out for them. I knew I had to watch out and get out of the way. I understood that." There are three tracks crossing First street. The distance between the tracks is approximately 9 feet from center to center of the tracks. A train could be seen by a person standing on First street on the center track as it approached from the west, the direction the engine came, which hit the defendant, at a distance of about 1,000 feet, before it reached First street. The accident occurred between 3 and 4 o'clock in the afternoon. The plaintiff was working on the southerly track, which is known as the "Bradford Track." As the passenger train from Bradford came in from the west towards the station, the plaintiff stepped from that track over on to the middle track, and was struck by a yard engine going in the same direction as the passenger train. The passenger train was running from 10 to 15 miles an hour when it crossed First street, and the yard engine not over 5 or 6 miles an hour. The plaintiff says:

"When I see the Bradford train coming in, I left the Bradford track and went on the center track. I was working on the Bradford track before the train come. I had got pretty nearly through on the Bradford track. I went to the other track and started working, and watched both sides when I stepped on the other track—the center track. I did not stand on the center track looking at the Bradford train as it went by. I jumped on the center track and started·to work. The Bradford train whistled and rang the bell when it came in. Pretty soon after I stepped over on the middle track the other engine struck me."

The plaintiff says the bell of the yard engine was not ringing and it was snowing pretty hard; but he could· see up the track toward the engine about three rail lengths, or 90 feet. Four witnesses called by the defendant testified that the bell of the yard engine was ringing as it approached the crossing. The fireman of the yard engine says he was ringing the bell, and the engineer and one of the crew on the yard engine testify that the bell was ringing as they approached the crossing. The fireman on the Bradford engine says that when about 100 feet from the crossing he saw the plaintiff step over from the Bradford to the center track and watch the Bradford train as it passed by; that he noticed the yard engine coming, and hung his head out of the cab window,

waved his hand to the plaintiff, and called to him to attract his attention; that when his engine was over the crossing about 25 or 30 feet the yard engine struck the plaintiff; and that the bell on the yard engine was ringing. As against the positive evidence of these four witnesses, we have the assertion of the plaintiff that the bell was not ringing. Upon this evidence the case did not present a question for the jury. Culhane v. N. Y. C. & H. R. R. R. Co., 60 N. Y. 133. If, when the plaintiff saw the Bradford train, he had looked to see if a car or engine was approaching on the center track from the same direction, he would have seen the yard engine, which was in plain sight and less than 90 feet from him. It is quite evident that he was watching the Bradford train as it passed, and not looking out for an engine, which he knew might be approaching on the track he was on, at any time.

The plaintiff says that it was snowing pretty hard and the wind was blowing from the west. If this obscured his vision, it required all the more care on his part. He says he could see three rail rengths—rails about 30 feet long. As the yard engine was approaching slowly 4 to 6 miles an hour, there was ample opportunity to have protected himself from injury if he had used ordinary care. Five witnesses for the defendant testified that it was not snowing or storming at the time of the accident. The engineer of the Bradford train first saw the plaintiff on his track 300 or 400 feet away. It must be held as matter of law that the plaintiff failed to show any negligence on the part of the defendant, that the plaintiff was guilty of negligence which contributed to the accident, and that the accident was a risk incident to his employment. Crowe v. N. C. & H. R. R. R. Co., 70 Hun, 37, 23 N. Y. Supp. 1100; Tomko v. Central R. R. Co., 1 App. Div. 289, 37 N. Y. Supp. 144; Moccia v. N. Y. C. & H. R. R. R. Co., 46 App. Div. 58, 61 N. Y. Supp. 338. The judgment and order should be reversed.

Judgment and order reversed, and a new trial ordered, with costs to the appellant to abide the event.

SPRING and WILLIAMS, JJ., vote for reversal on the ground that the verdict is against the weight of the evidence. KRUSE, J., votes for reversal in a separate memorandum. McLENNAN, P. J., dissents, and votes for affirmance.

KRUSE, J. (concurring). I think that the question whether the bell was rung on this engine which struck the plaintiff, as well as the contributory negligence of the plaintiff, was for the jury under the case of McDonald v. Metropolitan St. Ry. Co., 167 N. Y. 66, 60 N. E. 282; but it may well be that their finding is against the weight of evidence. The serious question in the case as I view it is the defendant's negligence. It seems to have been predicated upon the failure to warn the plaintiff of the approaching engine. The plaintiff was at work at a street crossing. Section 421 of the Penal Code requires the engineer to ring the bell or sound the whistle upon his locomotive when approaching certain road or street crossings, or cause the same to be rung or sounded, at least 80 rods from the crossing, and to continue ringing the bell or sounding the whistle at intervals until the locomotive and the train have passed the crossing. A failure by the engineer to comply with the statute makes him guilty of a misde-

meanor.   Such was the duty of the engineer on this locomotive, assuming that the statute applies; but, if not, the jury were warranted in finding that reasonable care upon his part required him to give warning irrespective of the statute.   A compliance by the engineer with this statute, if it applies to this case, would have given the plaintiff ample warning; but the plaintiff contends the statute was not complied with.   The question is therefore presented as to whether the failure upon the part of the engineer to ring the bell or sound the whistle was such an act of negligence as is chargeable to the defendant, and for the consequences of which it' is liable to the plaintiff, or whether the plaintiff and the engineer were fellow servants within the rule which exonerates the master from the consequences of a negligent' act done or suffered by one through which the other is injured. The latter was held in Coon v. Syracuse &'Utica R. R. Co., 5 N. Y. 492, and to the same effect is the case of McDonald v. N. Y. C. & H. R. R. Co., 63 Hun, 587, 18 N. Y. Supp. 609.

If this view is correct, it leads to the same result as the conclusion of Judge NASH, and in any event the judgment should be reversed, and a new trial ordered.