We think that Justice WHITE had no jurisdiction of the case, and consequently the bond was void.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except ANDREWS, Ch. J., and GRAY, J., not voting; HAIGHT, J., taking no part.

Judgment reversed.

---

LOREN DOING, as Administrator of ROBERT P. HARE, Deceased, Appellant, *v.* THE NEW YORK, ONTARIO AND WESTERN RAILWAY COMPANY, Respondent.

1. NEGLIGENCE — RAILROADS — FAILURE TO FURNISH SAFE PLACE FOR EMPLOYEES. If a railroad company permits detached and imperfectly controlled cars to be shunted upon tracks running into a repair shop, from which there is afforded no view of the exterior tracks, in such a manner that cars, although not intended for the shop, are liable to enter without warning and endanger the lives of employees in the shop, the company fails to discharge its duty of furnishing its employees a safe place to work in.

2. SHUNTING — OBVIOUS DANGER. The danger to be apprehended from the practice of shunting railroad cars, by "kicking," upon tracks running into a repair shop, in which there are unwarned and unprotected workmen, is so obvious, that when the practice is known to the company it is bound, in the proper discharge of its duties towards its employees, to guard against it by proper rules and regulations, so far as reasonable and practicable.

3. DUTY OF COMPANY TO REGULATE DANGEROUS PRACTICE. When a railroad company's employees are known to be doing their work in a reck-

less and dangerous manner, it is the duty of the company to change the manner of operation by some regulation or rule.

Doing v. N. Y., Ontario & W. R. Co., 73 Hun, 270, reversed.

(Argued January 20, 1897; decided February 2, 1897.)

Appeal from a judgment of the General Term of the Supreme Court in the fourth judicial department, entered December 20, 1893, which affirmed a judgment in favor of defendant dismissing the complaint, entered in pursuance of a nonsuit, granted at the close of the plaintiff's evidence on trial at Circuit.

This action was brought to recover damages for the death of plaintiff's intestate through the alleged negligence of the defendant.

The facts, so far as material, are stated in the opinion.

George W. Ray for appellant. The railway company owed a duty to its employees to make, promulgate and enforce proper and reasonably adequate rules and regulations governing the action of all its servants and having in view the safety of all its employees, and which would prevent the maiming, injury or death of one by the negligence of another, and as it did not perform such duty, it is liable. (Abel v. D. & H. C. Co., 128 N. Y. 662; Sheehan v. N. Y. C. & H. R. R. R. Co., 91 N. Y. 339; Dana v. N. Y. C. & H. R. R. R. Co., 92 N. Y. 639; Slater v. Jewett, 85 N. Y. 61; Potter v. N. Y. C. & H. R. R. R. Co., 136 N. Y. 80; Pantzar v. T. F. I. M. Co., 99 N. Y. 373; Morgan v. H. R. O. & I. Co., 133 N. Y. 670; Ford v. L. S. & M. S. R. Co., 124 N. Y. 493; 117 N. Y. 638; Wood on Mast. & Serv. 403, 794; Regan v. S. L., etc., R. Co., 93 Mo. 348.) The court erred in taking these questions as well as the other questions of fact from the jury. (McNally v. P. Ins. Co., 137 N. Y. 389; Schwandner v. Birge, 33 Hun, 186; Kranz v. L. I. R. Co., 123 N. Y. 1; Pantzar v. T. F. I. M. Co., 99 N. Y. 368; Benzing v. Steinway, 101 N. Y. 547; Slater v. Jewett, 85 N. Y. 61; Abel v. D. & H. C. Co., 128 N. Y. 662; Embler v. Town of Wallkill, 132 N. Y. 222;

*Plank* v. *N. Y. C. & H. R. R. R. Co.,* 1 T. & C. 319; 60 N. Y. 607; *Scholl* v. *B. R. R. Co.,* 17 N. Y. Supp. 755; *Pratt* v. *L. S. & M. S. R. Co.,* 63 Hun, 616; *Woodin* v. *W. N. Y. & P. R. Co.,* 16 N. Y. Supp. 840.) The plaintiff's intestate was not guilty of contributory negligence. (*Kranz* v. *L. I. R. Co.,* 123 N. Y. 1; *Embler* v. *Town of Wallkill,* 132 N. Y. 222; *McGovern* v. *C. V. R. R. Co.,* 123 N. Y. 280; *Stackus* v. *N. Y. C. & H. R. R. R. Co.,* 79 N. Y. 464; *Weed* v. *Village of Ballston Spa,* 76 N. Y. 329; *Peil* v. *Reinhart,* 127 N. Y. 381; *Palmer* v. *Dearing,* 93 N. Y. 7; *Looney* v. *McLean,* 129 Mass. 33; *Chadwick* v. *Brewster,* 15 N. Y. Supp. 598; *Boyce* v. *M. R. Co.,* 118 N. Y. 318; *Russell* v. *M., etc., Co.,* 32 Minn. 234; *Davidson* v. *Cornell,* 132 N. Y. 228; *Gates* v. *State,* 128 N. Y. 221; Beach on Con. Neg. 362.) The defendant cannot claim exemption from liability on the ground of ignorance of the practice or custom of kicking cars on these tracks, for it had continued for two and one-half years, and it was bound to know. (*Coppins* v. *N. Y. C. & H. R. R. R. Co.,* 122 N. Y. 564; *Benzing* v. *Steinway,* 101 N. Y. 553; *Whittaker* v. *D. & H. C. Co.,* 126 N. Y. 544; *Corcoran* v. *Holbrook,* 59 N. Y. 520.)

*Howard D. Newton* for respondent. The defendant was under no obligations whatever to promulgate any rule asked for by the plaintiff. (*Cook* v. *N. Y. C. & H. R. R. R. Co.,* 119 N. Y. 653; *Kranz* v. *L. I. R. Co.,* 123 N. Y. 5; *Berrigan* v. *N. Y., L. E. & W. R. R. Co.,* 131 N. Y. 582; *Carlson* v. *P. B. Co.,* 132 N. Y. 273; *Morgan* v. *H. R. O. & I. Co.,* 133 N. Y. 666; *Larow* v. *N. Y., L. E. & W. R. R. Co.,* 61 Hun, 11; *Ely* v. *N. Y. C. & H. R. R. R. Co.,* 88 Hun, 323; *Mancuso* v. *C. C. Co.,* 87 Hun, 519; *Smith* v. *E. T. Co.,* 89 Hun, 588; *Cameron* v. *N. Y. C. & H. R. R. R. Co.,* 145 N. Y. 400.)

O'BRIEN, J. The plaintiff's intestate was killed on the 3d day of March, 1890, while at work in the defendant's repair shop, and it is claimed that his death was the result of negligence on the part of the defendant.

At the trial, when the plaintiff's proofs were closed, the court, on motion of defendant's counsel, granted a nonsuit and the complaint was dismissed, to which ruling the plaintiff excepted.

The judgment cannot be sustained if in any fair view of the case there was any evidence for the consideration of the jury on the question of defendant's negligence.

The proofs established, or tended to establish, the following facts : The deceased was at work repairing a crippled car in the repair shop, which occupied the whole of a building fifty feet wide and about two hundred feet in length. Three tracks passed through the shop through doors which were kept closed, and there were no windows on the side where the tracks entered the building from the yard.

These tracks ran from the shop out into the yard and were connected with the main track and other tracks by switches. The three tracks were used for the purpose of moving crippled cars and material into and from the shop to the main and side tracks. The cars were moved by being kicked or shunted by means of force applied to them by engines some distance from the shop, and in that way propelled by the momentum into or near the shop doors and controlled while in motion by the brakes. On the day that the deceased was killed some of the men who worked in the yard or about the shops were moving cars on the tracks outside the shop for the purpose of collecting and moving scrap iron. There was a pile of this iron near one of the tracks about twenty feet from the shop door, and the men wanted to load it upon a car. With this end in view they placed a car already loaded with twenty-four thousand pounds of scrap iron on one of these tracks at a point about eight hundred feet from the doors and there kicked or shunted it towards the shop. The brakeman evidently saw that the force applied would send the car past the pile of iron where they intended to have it stop, and possibly through the doors, and he attempted to control the movement with the brake, but, for some reason, it did not work, and the car ran past the pile of iron, crashed through the doors and killed the deceased,

who was working inside under one of the crippled cars. He had no means of guarding against such a peril, as it was impossible for him to see the approaching car, even if the work at which he was employed would permit him to be on the lookout, since the doors were closed and there were no windows.

The question is whether this was an accident or the result of some neglect or breach of duty on the part of the defendant. A loaded car was driven through the door of a workshop filled with busy men and one of them was killed. That the defendant's workmen in attempting to move cars in this manner in the yard were engaged in a very dangerous, if not reckless experiment, cannot well be denied. The danger of the experiment consisted in moving cars in such a way that no one could tell exactly when or where they would stop. If upon the occasion in question the force applied was so measured that the car would stop at the pile of scrap iron, the deceased would not have been killed, but if the force applied was sufficient to send it twenty feet further, and it could not be controlled by the brake, the danger to the men inside the shop was so obvious that the manner in which this part of the defendant's work was carried on may very well be characterized as reckless. We will assume then, what cannot be questioned, that the workmen were doing the defendant's work in a dangerous and reckless manner. But these workmen were doing nothing but what, according to the testimony, they had been doing for years before. If the defendant permitted its employees to carry on its operations upon these three tracks outside the shop in such a manner as to endanger the lives of those inside, who could not protect themselves, it failed to discharge to the deceased the duty which the law imposed upon it of furnishing him a reasonably safe place to do his work. The defendant had the power to control and regulate its business. The law imposed upon it the duty of making and enforcing such reasonable rules and regulations for the government of the men in its service, as to prevent or guard against injury by one servant to another in so far as that was reasonable and practicable. It could cer-

tainly put an end to the practice of propelling cars upon these tracks by a force that could not be controlled, and it could provide for moving them in some other and safer way. In other words, it could change this method of doing the work by making proper rules and regulations to that end. The jury could have found from the evidence that the practice of kicking or shunting cars upon these tracks in the direction of the doors of the repair shop was known to the defendant. The danger to be apprehended from such a practice was so obvious that the defendant, in the proper discharge of the duties which it owed to its employees, was bound to guard against it by proper rules and regulations, so far as that was reasonable and practicable. (*Abel* v. *D. & H. C. Co.*, 128 N. Y. 662; *Morgan* v. *Hudson River O. & I. Co.*, 133 N. Y. 670; *Berrigan* v. *N. Y., L. E. & W. R. R. Co.*, 131 N. Y. 582.)

When the defendant's employees were known to be doing their work in a reckless and dangerous manner, it was the duty of the master to change the manner of operation by some regulation or rule.

It was bound only to reasonable care in this respect, it is true, but the danger involved in the methods in use was so obvious that the result could well have been anticipated. The plaintiff gave in evidence the published rules of the company, and it is conceded that they contain no provision relating to this subject. The plaintiff attempted to prove the case by witnesses who were in the employ of the defendant at the time of the trial and at the time of the death of the intestate. It is claimed that the testimony of these witnesses establishes the fact that the defendant made and published proper rules on this subject by posting on blackboards or otherwise. The testimony with respect to rules published in this manner was so vague and indefinite that, in view of the fact that nothing of the kind was inserted in the general printed rules, it became a question for the jury to determine as matter of fact whether the defendant had ever made or promulgated any proper rules to guard against accidents from moving cars in this manner upon the tracks leading to the shop. If the men

in the defendant's employ were acting in violation of a known and established rule, the death of the intestate might be attributed to the misconduct of co-servants. On the other hand, if the men were acting without any known rule or regulation, and simply following a dangerous practice sanctioned by time and custom, the result might be imputed to the neglect of the defendant in omitting to change the method of doing the work and adopting a safer one. The trial court could not hold, as matter of law, upon the proofs as they appear in the record, that the defendant performed its duty in that respect, nor that the evidence was of such a character that the plaintiff failed to show any fault in that regard on the part of the defendant.

We have seen that what the trainmen attempted to do was to remove a pile of scrap iron from a point within twenty feet of the doors of the shop upon a car, already partially loaded, and which had been kicked or shunted towards the doors, and that the brakeman was unable to control it with the brake. It was a question whether the men were using a defective car, or rather, one with a defective brake. If they were, and this defect was the proximate cause of the injury, the defendant might be held liable on the ground that it failed to furnish suitable appliances for the performance of the work by the servants. The injury to the deceased was on Monday, and the evidence tended to show that on the Saturday previous the same car was used for a like purpose on another track, and when shunted the brakeman attempted to control it with the brake and failed. On that occasion it would have escaped from the control of the men as it did on the Monday following but for the fact that before it reached the point it was blocked upon the track by one of the workmen. The failure of the brake to stop the car on Saturday was in the presence of the foreman of the shop who had charge of the men and of the work and who, it must be presumed from what appears, represented the defendant. If the defendant had notice on Saturday that the car or the brake was out of

order or defective for the purpose for which it was used, the fact that it was used for the same or a similar purpose on Monday, with still more fatal results, was some proof of negligence.

The jury could, we think, have found that either the car or brake was unsuitable and unsafe for the purpose for which it was used, or that it was impracticable to control the speed at all by the use of a brake before it reached the doors. If the latter alternative was the fact, then the reckless and dangerous character of the practice of moving the cars in that way, at that point, becomes still more apparent, since it depended largely upon chance whether the car would go through the doors or stop before reaching them.

It was important that the car which the defendant furnished to be moved on these tracks could be kept under control, and if it could not, either because it was unsuitable or the brake defective, the master was at fault. We think there was some evidence for the jury on these questions.

The evidence produced by the plaintiff did not, it is true, make a strong case, but we are bound upon the appeal to give him the benefit of the most favorable view of it that can fairly be taken, and all facts and inferences that might fairly be drawn from it by the jury are to be deemed to be established. The case was not so destitute of proof as to warrant a nonsuit, but it should, we think, have been submitted to the jury.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur (HAIGHT, J., in result and VANN, J., on first ground), except GRAY, J., dissenting, and MARTIN, J., not sitting.

Judgment reversed.