James E. Corcoran, Appellant, *v.* The New York, New Haven and Hartford Railroad Company, Respondent.

*Railroad — rule as to keeping an employee to warn a laborer, engaged in sweeping switches, of the approach of shunted cars.*

Where it appears that it is customary, when shunting cars in a railroad yard, to station a brakeman at the front end of the cars being shunted, the necessity of promulgating a rule that some other employee shall be detailed to keep constant watch over a laborer employed in sweeping switches in the yard in sight of the shunted cars, in order to prevent such laborer from being struck by the shunted cars, is not so obvious as to make the question one of common experience and knowledge.

Appeal by the plaintiff, James E. Corcoran, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Dutchess on the 31st day of January,

1902, upon the dismissal of the complaint by direction of the court after a trial at the Dutchess County Trial Term.

*Caleb Birch, Jr.,* for the appellant.

*Walter C. Anthony,* for the respondent.

JENKS, J. :

We held on the first appeal (46 App. Div. 201) that the fault of the defendant, if any, was failure to promulgate proper rules for the management and conduct of the movement of its cars and to direct that proper warnings be given. We held on the second appeal (58 App. Div. 606) that the court erred in its refusal to charge that the jury were not authorized to find a rule necessary or proper for the management in question unless there was proof of such a rule in force on some other roads, or that it was practicable and reasonable to provide against such an accident by a rule, or unless the propriety and necessity of that particular rule were so obvious as to make it a question of common experience and knowledge, citing *Berrigan* v. *N. Y., L. E. & W. Railroad Co.* (131 N. Y. 582). It is now contended that the case is cured of former defects, and that it presented a question for the jury.

The learned counsel for the appellant states that the record does not show that on the previous appeals *Doing* v. *N. Y., O. & W. R. Co.* (151 N. Y. 579) was called to our attention. This statement must be inadvertent, for I find that WOODWARD, J., who then wrote for the court, names and distinguishes that case in his opinion (58 App. Div. 606, 608). It is further urged that the *Doing* case holds that the "kicking" of cars is of itself a dangerous and negligent practice. I think that the case does not go so far. In *Dowd* v. *N. Y., O. & W. R. Co.* (170 N. Y. 459) the court, per VANN, J., say : " The practice of kicking cars from one track to another, upon which men are at work and so situated that they cannot see the approaching danger, was recently condemned by us as dangerous and reckless. (*Doing* v. *N. Y., Ont. & W. R. Co.*, 151 N. Y. 579, 583.) " The learned counsel loses sight of the qualifying phrase " and so situated that they cannot see the approaching danger," which discriminates this case from the *Doing* and *Dowd* cases. Doing was at work in a repair shop, which afforded no view of the

exterior track at the time the shunted car crashed through the doors of the shop and killed him. Dowd, when killed, was at work as a repairer under a car situated near the middle of a train of twenty-five coal cars. This plaintiff was employed in sweeping the snow off the frog of a switch in the open yard and in the daytime, and although the day was stormy and snowy, yet it was not pretended that he could not have seen the approaching danger. The plaintiff has the burden of showing the shortcoming of the defendant in making proper regulations for employees and in the conduct of the business of its yard. (*Potter* v. *N. Y. C. & H. R. R. R. Co.*, 136 N. Y. 77; *Rose* v. *Boston & Albany R. R. Co.*, 58 id. 217.) In *Berrigan* v. *N. Y., L. E. & W. Railroad Co.* (*supra*) the court say : " The learned trial judge submitted to the jury the question whether the defendant was at fault in omitting to make and publish such a rule. This opened to the jury a wide field for speculation and conjecture. In the absence of some proof on the part of the plaintiff that such a rule was in operation by other roads or of persons possessing peculiar skill and experience in the management and operation of railroads to the effect that such a rule was necessary or practicable under the circumstances, or unless the necessity and propriety of making and promulgating such a rule was so obvious as to make the question one of common experience and knowledge, the court is not warranted in submitting such a question to the jury."

It is urged that the proof showed that a rule should have required the foreman to keep guard over his men, to give them personal warning, and if called away to put another in his stead. The witness Cogins, a " laborer at railroading generally," testified that he had worked in other yards, that the foreman naturally stood and watched the green men, and if he went away with a part of the gang, there is " some man got power to protect the men." This was testimony as to a practice, but when he was questioned as to any rule for such practice elsewhere, he said that the rule of the New York Central was that "handcar men in all cases, the boss of that gang should protect himself and his men." Such a rule obviously would have no application to an employee sweeping snow off a switch in the railroad yard. On the other hand, I think it cannot be said that the necessity and propriety of making a rule

that a boss or his *alter ego* should stand over every laborer employed in sweeping switches in a railroad yard under all circumstances was so obvious as to make the question one of common experience and knowledge. The plaintiff had been employed about the yard of the defendant for five weeks. He was injured at eleven o'clock in the morning while sweeping the snow off the frog of a switch. He testified that he knew the only possible danger could come from the south, and that during his several hours of employment he looked to the south several times. His witness Denaught, who was a brakeman on the front end of the front car of the " kicked " train at the time, testified that the cars were moving at the rate of six to eight miles an hour; that although it was snowing and blowing quite hard at the time, he could see two, three or four car lengths ahead before he saw the plaintiff, and at that distance he saw the plaintiff and " hollered " to him, but in vain, and that he failed to reach the brake at the other end of the car in time to stop the shunted cars. If the car was thirty-four feet long, and the brakeman who, pursuant to the practice of the yard, was stationed at the front of the first car to give warning, saw the plaintiff and gave warning when the first car was from 102 to 136 feet away, traveling at six to eight miles an hour, the necessity and propriety of making a rule that some other employe should stand to keep constant watch over a man simply sweeping a switch is not so obvious as to make the question one of common experience and knowledge. Even if the defendant had made a rule that the lookout should be stationed with the worker rather than on the " kicked " cars, the prcautions are of similar nature, and it is debatable which of such similar safeguards is the better. If, on the other hand, the accident was due to the brakeman quitting his place of warning to reach the brake at the other end of the car, instead of continuing his outcry, of course, under the facts of this case, there is no liability upon the defendant.

The testimony of Cox, a foreman of the West Shore railroad, is to the same effect as that of Cogins, namely, that if he were out with a gang he made it a business to watch the men and to have his men watch the cars at the same time. But he did not show that, previous to the accident or at the time thereof, there was any rule extant which might, if adopted by the defendant, have pre-

vented the accident. The particular rule read in evidence, if applicable to the case at bar, was not shown to have been in existence when the accident happened, while the testimony as to instructions which antedated the rule was too vague to afford any basis for submission of the question to the jury. It did not appear that there was any rule or regulation which required the use of the red flag when cars were shunted or "kicked," but only to protect men working in cars and on the main track when workmen were tearing up the track. On the other hand, the plaintiff's witness Joseph testified on cross-examination that there was no practicable way that could be devised other than that employed at the time the plaintiff was injured.

I think that the plaintiff's proof did not meet the standard, and that the court, WILMOT M. SMITH, J., properly nonsuited the plaintiff.

Judgment unanimously affirmed, with costs.