ANNA B. SHANNON, as Administratrix, etc., of SPENCER SHANNON, Deceased, Appellant, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

*Negligence — collision on a railroad — duty of an employer to make rules — where, had the rules prescribed been observed, an accident would not have occurred, a railroad company is not liable because of its not having made other rules.*

The law imposes upon an employer the duty of making and enforcing such reasonable rules and regulations for the government of the men in his service as will prevent or guard against injury by one servant to another, in so far as that is reasonably practicable.

Where a railroad has established and promulgated rules relating to the management of its trains and the government of its employees, and such rules have been uniformly enforced, and it appears that had the rules been followed no accident would have occurred, such railroad is not guilty of negligence because of its failure to promulgate other or additional rules.

In an action brought to recover damages resulting from the death of the plaintiff's intestate, it appeared that the intestate, who was an engineer in the employ of the defendant railroad company, was killed in a collision between his locomotive and a locomotive which was crossing from one track to another.

The accident occurred about two o'clock on a foggy morning while the deceased's train was traveling easterly. For the protection of such trains the defendant had installed two signal lamps, the one nearest the crossover being known as the home signal, and the one furthest from the crossover being known as the distant signal. The color of the light displayed by these signals was automatically regulated by the setting of the switches. At the time of the accident the distant signal displayed a green light, meaning proceed with caution, and the home signal displayed a red light, meaning stop.

The rules promulgated by the defendant provided as follows:

"A signal imperfectly displayed, or the absence of a signal at a place where a signal is usually shown, must be regarded as a danger signal."

"In the absence of any signal trains must stop."

"In all cases of doubt or uncertainty take the safe course and run no risks."

The fog which prevailed at the time of the accident rendered it practically impossible for the deceased to see the signals. Such fogs were frequent in that locality. The deceased was familiar with the rules, and had a copy of them in his possession and had passed over the scene of the accident almost daily for twenty-five years. At the time of the accident the deceased's train was traveling at its maximum speed.

The only negligence alleged on the part of the defendant was its failure to adopt a rule, which had been promulgated by two other railroad companies, to the effect that when a train was to cross from one track to another, at a time when the signal lights were obscured by fog, torpedoes should be placed upon the track as an additional warning to a train approaching the point of crossing. The evidence tended to show that the use of torpedoes upon the defendant's road was entirely practicable and that, if they had been used upon the occasion in question, the accident probably would not have happened.

*Held,* that the existing rules of the defendant, if obeyed, were sufficient to prevent the accident, and that, therefore, the defendant could not be charged with negligence because of its failure to promulgate the additional rule respecting the use of torpedoes;

That the evidence established, as matter of law, that the deceased was guilty of contributory negligence;

That if he saw the signals or any of them, and failed to heed their warning, he was guilty of negligence; if he could not see them because of the fog, but knew their location, he was guilty of negligence in passing them without hav-

ing his train under control; and if he did not see them or know their location, or know where he was, he was guilty of negligence in proceeding at such a high rate of speed, without ascertaining whether or not it was safe for him to do so.

APPEAL by the plaintiff, Anna B. Shannon, as administratrix, etc., of Spencer Shannon, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Oneida on the 27th day of December, 1902, upon a nonsuit granted by the court after a trial at the Oneida Trial Term, certain specific questions having been submitted to the jury, and also from an order entered in said clerk's office on the 3d day of December, 1902, denying the plaintiff's motion to direct a general verdict in her favor.

The action was commenced on the 18th day of December, 1901, to recover the damages sustained by the plaintiff on account of the death of Spencer Shannon, her husband, alleged to have been caused through the negligence of the defendant, which occurred on the 8th day of October, 1901, while in defendant's employ as locomotive engineer, in a collision at Oriskany station, N. Y.

The jury found, upon all the evidence, that the defendant was guilty of negligence which caused the death of plaintiff's intestate, and that he was free from contributory negligence.

The learned trial court considered there was no evidence to support such findings, and accordingly granted defendant's motion for a nonsuit, the decision of which had been duly reserved until the questions submitted were answered by the jury. The correctness of such determination is challenged by the appellant, and it is, therefore, necessary to review the evidence.

*Howard. C. Wiggins,* for the appellant.

*Charles T. Titus,* for the respondent.

McLENNAN, P. J.:

The principal facts are not in dispute. Plaintiff's intestate, at the time of his death, was fifty-four years of age; was a locomotive engineer, and for more than twenty-five years immediately prior to the accident had been continuously employed in that capacity upon the Mohawk division of the defendant's railroad, which extends from West Albany to De Witt, just east of the city of Syracuse.

He was entirely familiar with that division.; the manner in which trains were operated upon it; with the rules governing the same, and at the time of the accident had in his pocket the book of rules promulgated by the defendant for his guidance and that of its other employees.

At eleven-fifteen o'clock (about an hour after the regular leaving time) on the evening of October 7, 1901, the deceased started from De Witt, going east, as engineer upon a fast freight train composed of thirty-five loaded cars, manned and equipped in the usual way, and scheduled to run about thirty-five miles per hour. Such train was on track No. 4, the regular east-bound freight track, being the outside or most northerly of the four main tracks of defendant's railroad. The train proceeded to Factory Village, a short distance east of the city of Rome, without incident, where it stopped for a time. At one-thirty-five in the morning of October 8, 1901, it again started east, going between thirty and thirty-five miles an hour, until it reached Oriskany station, about seven miles distant, where it collided with an engine which was crossing from track No. 3, the west-bound freight track, to track No. 4, resulting in the death of plaintiff's intestate and three other employees of the defendant.

There is a signal tower at Oriskany station, from which are operated the switches which affect tracks Nos. 3 and 4. By the movement of such switches the signals for trains upon such tracks are automatically regulated; in fact, a switch cannot be set so as to permit an engine or train to cross from one track to the other, thus causing an obstruction upon the tracks, without indicating the same by the signals. One of the signals in question, for trains approaching from the west on track No. 4, is located 192 feet west of the tower, and is called the " home " signal. Upon it, when the track is clear for a train going east, the fact is indicated by a white light. When the track is obstructed a red light is shown, which is the danger signal and must not be passed. Another signal is located 2,192 feet west of the tower, and is called the " distant " signal. When a white light is shown from it it indicates to those in charge of a train approaching from the west that the track is clear beyond, but when a green light is shown it indicates caution, and means that a train when it passes such signal must be under full control. Still another signal is located two and one-half miles west of the tower,

and is called the "swamp" signal.   It is operated from a tower at that point.   The light is suspended from a bridge directly over track No. 4, and is either red or white, indicating safety or danger, as the case may be.   There is a switch between the "home" signal and the tower, and a crossover leading from track No. 3 to track No. 4, and across track No. 4 to the siding north of it.

On the morning in question a freight train came to Oriskany station from the east on track No. 3.   It was desired to get a car standing on the siding north of track No. 4 to add to such train. To that end the engine was uncoupled from the train; the tower man opened the switch to let the engine from track No. 3 onto track No. 4, and in doing so he set the "home" signal 192 feet to the west of the tower at danger (so as to show a red light), and set the "distant" signal 2,192 feet west of the tower at caution (showing a green light).   All this being done the engineer on the west-bound freight train started from track No. 3 across track No. 4 to take the car from the siding.   While thus engaged, and when his engine was upon track No. 4, the east-bound freight train upon track No. 4, upon which plaintiff's intestate was engineer, he having failed to observe or heed the green light at the "distant" signal or the red light at the "home" signal, dashed into the engine in front of it, without even slacking its speed, with the result above indicated.

The rules promulgated by the defendant, which the deceased had and was familiar with, provided:

"A signal imperfectly displayed, or the absence of a signal at a place where a signal is usually shown, must be regarded as a danger signal."

"In the absence of any signal trains must stop."

"In all cases of doubt or uncertainty take the safe course and run no risks."

The evidence tends to show that at the time of the accident there was a dense fog in the locality, and such as to render it practically impossible for the deceased to see the signals, considering their character, location and the power of the lights displayed.   The evidence also tends to show that such fogs were frequent in that locality and upon the Mohawk division of the defendant's railroad.

It was proven that the Long Island Railroad Company and the Delaware and Hudson Canal Company had adopted and enforced rules which, in effect, required : When a train or engine was to cross from one track to another when a fog prevailed so as to obscure the signal lights, that, before so crossing, torpedoes should be placed upon the track as an additional warning of danger to a train approaching such point of crossing. The only negligence of which it is claimed the defendant was guilty was its failure to adopt and enforce a similar rule. The conditions existing upon the two railroads referred to were not the same as those which existed upon defendant's road ; neither was a four-track road, and neither had adopted the same system of signals employed by the defendant. The evidence, however, tended to show that the use of torpedoes upon the defendant's road was entirely practicable, and that if they had been used upon the occasion in question the accident probably would not have happened.

The question is thus presented whether or not the failure of the defendant to make and enforce a rule requiring torpedoes to be placed upon the track of an approaching train, as a warning that such track was to be crossed or obstructed by another engine or train, in addition to the warning given by the system of signals which the defendant has adopted, constituted actionable negligence on its part.

It is well settled that the law imposes upon an employer the duty of making and enforcing such reasonable rules and regulations for the government of the men in his service as will prevent or guard against injury by one servant to another, in so far as that is reasonably practicable. (*Doing* v. *New York, Ontario & Western R. Co.*, 151 N. Y. 579.)

The rules adopted by the defendant, and which, so far as appears, were universally enforced, if obeyed, furnished absolute protection to its employees operating its trains upon the tracks in question. Such rules were concededly properly promulgated, and they said to the deceased, in substance : A green light at the " distant " signal, 2,192 feet from Oriskany station, means caution ; you must have your train under absolute control when you pass it ; if it is imperfectly displayed or is absent it means there is danger ahead. The red light at the " home " signal means stop, and the absence of such

light as emphatically means stop, so that, if we assume the fog was so dense as to prevent the deceased from seeing either of the signals, the rules, if obeyed, furnished complete protection. In that case he was required to have his train under control as he passed the first and to stop when he reached the second, and in case he did not know where he was or where the signals were located, or if he was in doubt, the rules directed him to take the safe course and run no risk.

Where a railroad has established and promulgated rules relating to the management of its trains and the government of its employees, and such rules have been uniformly enforced, and it appears that had the rules been followed no accident would have occurred, such railroad is not guilty of negligence because of its failure to promulgate other or additional rules. (*Smith* v. *N. Y. C. & H. R. R. R. Co.*, 88 Hun, 468; affd., 153 N. Y. 664.)

As is said in the head note in *Niles* v. *N. Y. C. & H. R. R. R. Co.* (14 App. Div. 58): "That as it appeared that the existing rules of the company, if followed, would have been sufficient to have prevented the accident, the jury could not be allowed to speculate as to whether the existence of further rules was desirable."

It is concluded that the evidence failed to show that the defendant was guilty of negligence which caused the accident.

We think also that the evidence establishes, as matter of law, that plaintiff's intestate was guilty of contributory negligence. As we have seen, he was entirely familiar with that portion of defendant's road where the accident occurred. In the capacity of engineer he had passed and repassed it almost daily for twenty-five years. He had stopped his train at Factory Village, only seven miles from Oriskany station, where he knew there was a signal tower which operated the signals by which he was to learn whether or not he could pass such station. He also knew that it was his duty, in case such information was not conveyed to him by the signals, to regard its absence as a danger warning and a command to stop, but without giving any heed to the signals which were shown against him, if he saw them, or in case they could not be seen, to the rules which should then control his action, he went on, his train going at the maximum rate of speed; passed all the signals and even passed the station itself, without even slacking the speed of his train. If he saw the signals

or any of them, and failed to heed their warning, he was guilty of negligence; if he could not see them because of the fog, but knew their location, he was guilty of negligence in passing them without having his train under control; and if he did not see them or know their location, or know where he was, he was guilty of negligence in proceeding at such high rate of speed, without taking any means to ascertain whether or not it was safe for him to do so. In any view of the evidence, we think it must be concluded that the conduct of the plaintiff's intestate was negligent, and such as to prevent a recovery.

It follows that the judgment and order appealed from should be affirmed, with costs.

All concurred.

Judgment and order affirmed, with costs.