## SHANNON v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. November 17, 1903.)

1. RAILROADS—NEGLIGENCE—COLLISION—SWITCHING—SIGNALS.

In an action against a railroad company for negligence causing the death of an engineer, it appeared that the deceased, while drawing a freight train on a four-track road, collided with another train which was crossing the track diagonally to get to a switch. The operation of the switch automatically set three signals at distances of from 192 feet to 2½ miles from the switch, which showed that the track was not clear. The rules of the company required engineers to have their trains under full control when the signal 2½ miles away showed that the track was obstructed, and stop when the signal nearest the switch indicated the same condition, and to proceed with the utmost caution when it could not be seen what signals were displayed. On the night of the accident there was a dense fog, which it was claimed prevented deceased from seeing the signals, in spite of which he ran his train at full speed. It was shown that other roads required the placing of torpedoes on the track to warn approaching trains under similar circumstances. *Held*, that as the accident would not have happened, had the signals and rules which existed been heeded, failure to require the placing of torpedoes was not negligence.

2. SAME—CONTRIBUTORY NEGLIGENCE.

Deceased was guilty of contributory negligence in failing to have his train under control under the circumstances.

Appeal from Trial Term, Oneida County.

Action by Anna B. Shannon, as administratrix of Spencer Shannon, against the New York Central & Hudson River Railroad Company. From a judgment for defendant, and from orders denying plaintiff's motions for the direction of a verdict and for a new trial, plaintiff appeals. Affirmed.

The action was commenced on the 18th day of December, 1901, to recover the damages sustained by the plaintiff on account of the death of Spencer Shannon, her husband, alleged to have been caused through the negligence of the defendant, which occurred on the 8th day of October, 1901, while in defendant's employ as locomotive engineer, in a collision at Oriskany Station, N. Y. The jury found, upon all the evidence, that the defendant was guilty of negligence which caused the death of plaintiff's intestate, and that he was free from contributory negligence. The learned trial court considered there was no evidence to support such findings, and accordingly granted defendant's motion for a nonsuit, the decision of which had been duly reserved until the questions submitted were answered by the jury. The correctness of such determination is challenged by the appellant, and it is therefore necessary to review the evidence.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Howard G. Wiggins, for appellant.
Charles T. Titus, for respondent.

McLENNAN, P. J.  The principal facts are not in dispute. Plaintiff's intestate at the time of his death was 54 years of age, was a locomotive engineer, and for more than 25 years immediately prior to the accident had been continuously employed in that capacity upon the Mohawk Division of the defendant's railroad, which extends from West Albany to De Witt, just east of the city of Syracuse.  He was entirely familiar with that division, the manner in which trains were operated upon it, and with the rules governing the same, and at the time of the accident had in his pocket the book of rules promulgated by the defendant for his guidance and that of its other employés.  At 11:15 o'clock (about an hour after the regular leaving time) on the evening of October 7, 1901, the deceased started from De Witt, going east as engineer upon a fast freight train, composed of 35 loaded cars, manned and equipped in the usual way, and scheduled to run about 35 miles per hour.  Such train was on track No. 4, the regular east-bound freight track; being the outside or most northerly of the four main tracks of defendant's railroad.  The train proceeded to Factory Village, a short distance east of the city of Rome, without incident, where it stopped for a time.  At 1:35 in the morning of October 8, 1901, it again started east, going between 30 and 35 miles an hour, until it reached Oriskany Station, about 7 miles distant, where it collided with an engine which was crossing from track No. 3—the west-bound freight track—to track No. 4, resulting in the death of plaintiff's intestate and three other employés of the defendant.  There is a signal tower at Oriskany Station, from which are operated the switches which affect tracks Nos. 3 and 4.  By the movement of such switches the signals for trains upon such tracks are automatically regulated.  In fact, a switch cannot be set so as to permit an engine or train to cross from one track to the other, thus causing an obstruction upon the tracks, without indicating the same by the signals.  One of the signals in question, for trains approaching from the west on track No. 4, is located 192 feet west of the tower, and is called the "home signal."  Upon it, when the track is clear for a train going east, the fact is indicated by a white light.  When the track is obstructed a red light is shown, which is the danger signal, and must not be passed.  Another signal is located 2,192 feet west of the tower, and is called the "distant signal."  When a white light is shown from it, it indicates to those in charge of a train approaching from the west that the track is clear beyond; but, when a green light is shown, it indicates caution, and means that a train, when it passes such signal, must be under full control.  Still another signal is located 2½ miles west of the tower, and is called the "swamp signal."  It is operated from a tower at that point.  The light is suspended from a bridge directly over track No. 4, and is either red or white, indicating safety or danger, as the case may be.  There is a switch between the home signal and the tower, and a cross-over leading from track No. 3 to track No. 4, and across track No. 4 to the siding north of it.  On the morning in question a freight train came to Oriskany Station from the east on track No. 3.  It was desired to get a car standing on the siding north of track No. 4 to add to such train.  To that end, the engine was uncoupled from the train.  The towerman opened the

switch to let the engine from track No. 3 onto track No. 4; and in doing so he set the home signal, 192 feet to the west of the tower, at danger (so as to show a red light), and set the distant signal, 2,192 feet west of the tower, at caution (showing a green light). All this being done, the engineer on the west-bound freight train started from track No. 3 across track No. 4 to take the car from the siding. While thus engaged, and when his engine was upon track No. 4, the east-bound freight train upon track No. 4, upon which plaintiff's intestate was engineer—he having failed to observe or heed the green light at the distant signal, or the red light at the home signal, dashed into the engine in front of it, without even slacking its speed, with the result above indicated.

The rules promulgated by the defendant, which the deceased had, and was familiar with, provided:

"A signal imperfectly displayed, or the absence of a signal where a signal is usually shown, must be regarded as a danger signal.

"In the absence of any signal trains must stop.

"In all cases of doubt or uncertainty take the safe course and run no risk."

The evidence tends to show that at the time of the accident there was a dense fog in the locality, and such as to render it practically impossible for the deceased to see the signals, considering their character, location, and the power of the lights displayed. The evidence also tends to show that such fogs were frequent in that locality, and upon the Mohawk Division of the defendant's railroad.

It was proven that the Long Island Railroad Company and the Delaware & Hudson Canal Company had adopted and enforced rules which, in effect, required, when a train or engine was to cross from one track to another when a fog prevailed so as to obscure the signal lights, that, before so crossing, torpedoes should be placed upon the track, as an additional warning of danger to a train approaching such point of crossing. The only negligence of which it is claimed the defendant was guilty was its failure to adopt and enforce a similar rule. The conditions existing upon the two railroads referred to were not the same as those which existed upon defendant's road. Neither was a four-track road, and neither had adopted the same system of signals employed by the defendant. The evidence, however, tended to show that the use of torpedoes upon the defendant's road was entirely practicable, and that, if they had been used upon the occasion in question, the accident probably would not have happened. The question is thus presented whether or not the failure of the defendant to make and enforce a rule requiring torpedoes to be placed upon the track of an approaching train, as a warning that such track was to be crossed or obstructed by another engine or train, in addition to the warning given by the system of signals which the defendant has adopted, constituted actionable negligence on its part. It is well settled that the law imposes upon an employer the duty of making and enforcing such reasonable rules and regulations for the government of the men in his service as will prevent or guard against injury by one servant to another, in so far as that is reasonably practicable. Doing v. New York, Ontario & Western R. Co., 151 N. Y. 579, 45 N. E. 1028. The rules adopted by the defendant, and which,

so far as appears, were universally enforced, if obeyed, furnished abso-
lute protection to its employés operating its trains upon the tracks in
question.   Such rules were concededly properly promulgated, and
they said to the deceased, in substance:  "A green light at the distant
signal, 2,192 feet from Oriskany Station, means caution.   You must
have your train under absolute control when you pass it.   If it is im-
perfectly displayed or is absent, it means there is danger ahead.   The
red light at the home signal means stop, and the absence of such
light as emphatically means stop."   So that, if we assume the fog was
so dense as to prevent the deceased from seeing either of the signals,
the rules, if obeyed, furnished complete protection.   In that case he
was required to have his train under control as he passed the first, and
to stop when he reached the second; and in case he did not know
where he was or where the signals were located, or if he was in
doubt, the rules directed him to take the safe course and run no risk.
Where a railroad has established and promulgated rules relating to
the management of its trains and the government of its employés,
and such rules have been uniformly enforced, and it appears that, had
the rules been followed, no accident would have occurred, such rail-
road is not guilty of negligence because of its failure to promulgate
other or additional rules.   Smith v. N. Y. C. & H. R. R. Co., 88 Hun,
468, 34 N. Y. Supp. 881, affirmed in 153 N. Y. 664, 48 N. E. 1107.   As
is said in the headnote in Niles v. N. Y. C. & H. R. R. Co., 14 App.
Div. 58, 43 N. Y. Supp. 751:

"That as it appeared that the existing rules of the company, if followed,
would have been sufficient to have prevented the accident, the jury should
not be allowed to speculate as to whether the existence of other rules was
desirable."

It is concluded that the evidence failed to show that the defendant
was guilty of negligence which caused the accident.

We think, also, that the evidence establishes, as matter of law, that
plaintiff's intestate was guilty of contributory negligence.   As we
have seen, he was entirely familiar with that portion of defendant's
road where the accident occurred.   In the capacity of engineer, he
had passed and repassed it almost daily for 25 years.   He had stopped
his train at Factory Village, only seven miles from Oriskany Station,
where he knew there was a signal tower which operated the signals
by which he was to learn whether or not he could pass such station.
He also knew that it was his duty, in case such information was not
conveyed to him by the signals, to regard its absence as a danger
warning and a command to stop; but, without giving any heed to
the signals which were shown against him, if he saw them, or, in case
they could not be seen, to the rules which should then control his ac-
tion, he went on, his train going at the maximum rate of speed; pass-
ed all the signals, and even passed the station itself, without even
slacking the speed of his train.   If he saw the signals, or any of them,
and failed to heed their warning, he was guilty of negligence; if he
could not see them because of the fog, but knew their location, he was
guilty of negligence in passing them without having his train under
control; and if he did not see them or know their location, or know
where he was, he was guilty of negligence in proceeding at such high

rate of speed without taking any means to ascertain whether or not it was safe for him to do so. In any view of the evidence, we think it must be concluded that the conduct of the plaintiff's intestate was negligent, and such as to prevent a recovery. It follows that the judgment and order appealed from should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur.