## WILLIS v. PENNSYLVANIA R. CO.
### No. 338.

Circuit Court of Appeals, Second Circuit.
Aug. 5, 1941.

Writ of Certiorari Denied Nov. 10, 1941.

See 62 S.Ct. 187, 86 L.Ed. ——.

FRANK, Circuit Judge, dissenting.

Thomas J. O'Neill, of New York City (Jeremiah J. Riordan, of New York City, of counsel), for appellant.

Burlingham, Veeder, Clark & Hupper, of New York City (Ray Rood Allen and G. Hunter Merritt, both of New York City, of counsel), for appellee.

Before SWAN, CLARK, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

George S. Willis was a signal maintainer of many years' experience in the employ of the defendant railroad company. On August 25, 1939, he was struck and killed by a moving freight car while at work in the defendant's classification yard at Enola, Pennsylvania. His executrix brought action under the Federal Employers' Liability Act, § 1 et seq., 45 U.S.C.A. § 51 et seq. At the first trial, before Judge Galston, decision upon the defendant's motion for a directed verdict was reserved and the case submitted to the jury, which disagreed. The reserved motion was then denied and a new trial granted. The retrial, before Judge Byers, resulted in a verdict for the plaintiff in the sum of $36,000. On the defendant's motion the verdict was set aside and a verdict directed for the defendant or, in the alternative, for a new trial. With an inconsequential exception, the evidence in both trials was conceded to be the same. The plaintiff's evidence consisted of depositions taken in Pennsylvania and read at the trial; the defendant put in no evidence.

█ The appellant urges that Judge Galston's denial on the first trial of the defendant's motion for a directed verdict precluded the granting of a similar motion on the retrial where the evidence was the same. It may well be doubted whether the doctrine that judges of coordinate jurisdiction, sitting successively in the same case, should follow their associates' prior decisions, applies to a ruling that the evidence submitted is sufficient to go to the jury. The two trials are distinct; the judge who presides at the retrial is under no duty to ascertain whether the evidence presented is the same as at the former trial, and without counsel's admission would have no knowledge of the similarity. Rule 50 of the Rule of Civil Procedure, 28 U.S.C.A. following section 723c contains no suggestion that the trial judge is not free to exercise independent judgment in passing on the motion. In any event, the question whether the motion should have been granted is at large upon

appeal. For reasons hereafter stated we think direction of a verdict for the defendant was correct. Nor do we find error in the order granting, in the alternative, a new trial on the ground that the verdict for the plaintiff was contrary to the evidence. Montgomery Ward & Co. v. Duncan, 311 U. S. 243, 61 S.Ct. 189, 85 L.Ed. 147. We pass, therefore, to the merits of the controversy.

The story of the accident as told by the plaintiff's witnesses is briefly as follows: Willis and his fellow workers, Donofrio and Myers, were at work repairing switch 14 on the westerly side of the Enola classification yard. There was a long standing custom, with which all the employees were familiar, for switching to be continued while track repair work was being performed, and for the repair gang to protect themselves by having one of their number act as lookout and give warning of approaching cars. As cars are cut off at the Hump they roll down by gravity, attaining a speed of from six to ten miles per hour, and are directed to the proper track by the operation of switches manipulated from the Hump office. The car which hit Willis had to pass switch 14 to get on track 15, for which it was destined. The switch was so set that cars could be sent to tracks 15, 16 and 17 but not to track 14. At the time of the accident Donofrio and Myers were at work on the switch and Willis was standing watch, as had previously been arranged between the three. No warning was given by Willis of the approach of the car which hit him. Myers happened to catch a glimpse of it over his shoulder when it was five or ten feet distant and jumped out of the way. The other two were hit, with the result that Willis was killed and Donofrio seriously injured.

██ If the testimony of Donofrio and Myers is believed, Willis' neglect of his personal duty to act as watchman was the sole cause of his own death. In such circumstances his executrix can have no recovery under the Act. Great Northern Ry. v. Wiles, 240 U.S. 444, 36 S.Ct. 406, 60 L. Ed. 732; Davis v. Kennedy, 266 U.S. 147, 45 S.Ct. 33, 69 L.Ed. 212; Unadilla Ry. Co. v. Caldine, 278 U.S. 139, 49 S.Ct. 91, 73 L. Ed. 224; Blunt v. Pennsylvania R. Co., 6 Cir., 9 F.2d 395; Unadilla Valley Ry. Co. v. Dibble, 2 Cir., 31 F.2d 239. The recent amendment, 45 U.S.C.A. § 54, excluding as a defense assumption of risk, has no bearing on the rule that an employee cannot recover for injuries resulting solely from his

own fault. The appellant urges that the jury was free to discredit the testimony that Willis was to act as watchman for the repair gang and that its verdict shows that such testimony was disbelieved. The testimony is analyzed in detail in Judge Byers' opinion, reported in 35 F.Supp. 941. We agree with his conclusion that it was trustworthy. The jury could draw no inferences from the demeanor of the witnesses since their testimony was given by deposition, and we can see nothing in it which would justify the jury in finding that Willis was not to act as lookout for approaching cars. A verdict based on such a finding should not be permitted to stand. Chesapeake & O. Ry. Co. v. Martin, 283 U.S. 209, 216, 51 S. Ct. 453, 75 L.Ed. 983; Wigmore, Evidence, 3d Ed., § 2495; Pennsylvania Ry. Co. v. Chamberlain, 288 U.S. 333, 340, 53 S.Ct. 391, 77 L.Ed. 819.

■■ But if the jury were allowed to disbelieve that Willis was to watch, the plaintiff's case would not be bettered. There was no evidence whatever to justify an inference that either Donofrio or Myers should have been watching. The former was wielding a sledge and the latter was holding the punch for Donofrio. No finding of negligence on the part of either of them would be permissible on the record. Hence the actionable negligence, if any, must be predicated on the defendant's practice of kicking cars through switches under repair pursuant to the long standing custom that some member of the repair gang should stand watch. The appellant argues that the danger of such a practice is "of common experience and knowledge." The contrary, however, was held in Corcoran v. New York, N. H. & H. R. Co., 77 App.Div. 505, 78 N.Y.S. 953. This case is not controlling since the question whether the evidence of negligence is sufficient for submission to the jury is not determined by state decisions when the action is brought under the Federal Employers' Liability Act (Chicago, M. & St. P. Ry. v. Coogan, 271 U.S. 472, 747, 46 S.Ct. 564, 70 L.Ed. 1041); but we think the federal cases lead to the same conclusion. Aerkfetz v. Humphreys, 145 U.S. 418, 420, 12 S.Ct. 835, 36 L.Ed. 758; Toledo, St. L. & W. R. R. v. Allen, 276 U.S. 165, 170, 48 S.Ct. 215, 72 L.Ed. 513; Chesapeake & O. R. Co. v. Mihas, 280 U.S. 102, 108, 50 S.Ct. 42, 74 L.Ed. 207. We can see no negligence in allowing cars to pass a switch point where men are at work, if some member of the repair gang is charged with the duty to watch for and give warning of an approaching car.

■ The plaintiff at the trial offered evidence to show that in the Cedar Hill yard of the New Haven railroad the practice was to block the switch in advance of the one where the men were working so that no cars could come down. This evidence was properly excluded; the practice at a single yard of another railroad is not competent proof on the issue of whether defendant's practice was negligent. See Grand Trunk R. R. Co. v. Richardson, 91 U.S. 454, 469, 23 L.Ed. 356; Henion v. New York, N. H. & H. R. Co., 2 Cir., 79 F. 903, 904; Weaver v. B. & O. R. R. Co., 3 App.D.C. 436, 448; Standard Oil Co. v. R. L. Pitcher Co., 1 Cir., 289 F. 678, 685.

As the death of Willis did not result from an inherently dangerous operation sanctioned by the defendant or from the negligence of a fellow servant but from his own carelessness as watchman for the repair gang, Judge Byers properly set aside the verdict and directed a verdict in favor of the defendant.

Judgment affirmed.

FRANK, Circuit Judge (dissenting).

The jury was, I think, justified in returning a verdict for the appellant, and the District Court erred in directing a verdict for appellee, unless Willis was selected by the men to act as lookout. But the only evidence of that fact was the testimony of Donofrio and Myers, his fellow workmen, that Willis, by agreement, "was to do the watching." The trial judge put squarely up to the jury, in his charge, the issue of whether that testimony was credible. He said:

"It will be for you to say if the evidence indicates that these two men, Myers and Donofrio, were working physically, one using a sledge and the other holding the plunger, and if Willis was not doing any work it would be for you to say whether you can rely on their testimony that it had been suggested that he, Willis, was to do the watching. * * * If you find that the defendant was negligent in permitting the men to work as the testimony shows that they did, you may still inquire whether Willis contributed to the accident by his own negligence, if he was negligent; that is, by failing to observe the approach of the first car that struck him in time to avoid being hit. * * * Mr. Willis was re-

quired to watch out for approaching cars for himself and his fellow workmen, if you accept the testimony of Myers and Donofrio, and if his failure to do this was the proximate cause of his death your verdict must be for the defendant."[1]

Implicit in the jury's verdict was a refusal to believe the testimony of Donofrio and Myers. If they were entitled to reject this uncontradicted evidence, there is, I think, no basis for the conclusion that the evidence could not sustain a verdict against appellee.

Whether a jury is at all times privileged to ignore uncontradicted testimony is a question on which the courts have often disagreed.[2] A commentator discussing the decisions has candidly stated that "the courts apply one [rule] or the other as they mean to leave the matter to the jury, or to interfere."[3] It is generally accepted that a jury may ignore such testimony when there are factors which tend to discredit it.[4] Here, to be sure, the testimony was given by way of deposition rather than orally. Nevertheless, I think we are without power to say that the jury erred if it ignored such testimony, since we cannot say that that conclusion may not reasonably have been based upon the relation of employee and employer between the witnesses and appellee, especially in an action where the injured fellow employee is dead. The peculiar and subtle influences which are exerted, even without outward manifestation—or, indeed, without intention—by employers upon employees have been recognized both in judicial decision and in statute; and we should not deny the jury the power to take such influences into account. The admiralty courts, whose awareness of the realities of the employment relation has, seemingly, often been in advance of that of common law courts,[5] early recognized that the testimony of seamen which tended to exonerate their master or themselves was of little weight.[6] I would not here go so far, but I would hold that this is a factor which the jury may properly consider and which would justify it in disregarding such testimony. Moreover, to the influence of the employment relation could be added the fact that the evidence given by the men cleared them of possible blame for the fatality; in thinking that the jury should be allowed to take these facts into account, I believe I have some support even in the common law cases,[7] and I am not aware of any decisions to the contrary.

When, by constitution or otherwise, the jury is the established instrument of fact-finding, it is not, I think, for judges, whatever personal doubts they may have as to its efficacy,[8] to fetter its historic function of passing on the credibility of witnesses.[9] To put the matter in terms of conventional stereotypes, the credibility of witnesses is not a question of "law" for the court, but one of "fact" for the jury.

---

[1] The following should also be noted: "Mr. O'Neill: We ask your Honor to say to this jury that in view of the relation between the defendant and Myers and Donofrio and their testimony that is given here such contradictions as may possibly exist or which the jury may find to exist—I withdraw part of it and insert this: which they may find existed that they are not obliged to believe Willis was not actually working with them at the moment of the accident, and in that connection they may consider the character of the evidence for that reason, and they are not obliged to accept at face value the testimony of those witnesses but only what they believe to be true.

"The Court: That is true as to all testimony."

[2] See cases cited in Annotation on disregarding uncontradicted testimony in civil actions, 8 A.L.R. 796. See generally Moore, Facts, Sections 66–131.

[3] 8 A.L.R. 796, 797.

[4] Quock Ting v. United States, 140 U.S. 417, 420, 11 S.Ct. 733, 851, 35 L.Ed. 501; F. T. Dooley Lumber Co. v. United States, 8 Cir., 63 F.2d 384, 388; Spiro State Bank v. Bankers' Insurance Co., 8 Cir., 69 F.2d 185, 188.

[5] Cf. Hume v. Moore-McCormack Lines, Inc., 2 Cir., June 23, 1941, 121 F.2d 336.

[6] Moore, Facts, Sections 1021, 1110.

[7] Craft v. Northern Pacific R. Co., C.C., 62 F. 735, 739; Robinson v. New York Central R. Co., C.C., 9 F. 877, 878; Thomas v. Delaware, L. & W. R. Co., C.C., 8 F. 729, 731; but see Hauss v. Lake Erie & W. R. Co., 6 Cir., 105 F. 733, 736. Cf. Moore, Facts, Sections 1117, 1109; 8 A.L.R. 796, 820–823.

[8] It happens that I have, elsewhere, expressed such doubts concerning the jury in non-criminal cases.

[9] Cf. Conway v. O'Brien, 61 S.Ct. 634, 85 L.Ed. 969, reversing this court's decision in 2 Cir., 111 F.2d 611.