CATHERINE GREIF, as Administratrix of the Estate of FREDERICK GREIF, Deceased, Appellant, *v.* BUFFALO, LOCKPORT AND ROCHESTER RAILWAY COMPANY, Respondent.

Negligence — notice under Employers' · Liability Act — when person in charge is acting with authority of employer — Labor Law, section 202a, not retroactive.

1. Notice of intention to bring an action under the Employers' Liability Act examined, and *held*, that each of the requirements of the statute was fully complied with.

2. Plaintiff's intestate was fatally injured in making repairs to a defective car, while assisting a person, who, in the absence of the master mechanic, was left in charge of the barn and shop of defend-

## 240    GREIF *v.* BUFFALO, L. & R. RY. CO.

ant, a trolley railroad company. The trolley wire about which the intestate was working was charged with electricity, it not having been turned off by the switch provided for that purpose, of which he was ignorant, although that had been done on other occasions when he was at work about the car. Evidence was given of failure to instruct deceased, who was unfamiliar with electricity and electrical apparatus, as to the danger of the work about which he was engaged. Deceased received a shock which must have been produced by the wire about which he was at work. *Held,* that the evidence was sufficient to go to the jury upon the question of whether the person the intestate was assisting was acting as superintendent with the authority and consent of the employer, also upon the question of whether defendant was guilty of negligence, and upon the question of intestate's contributory negligence.

3. Section 202a of the Labor Law, added thereto by chapter 352 of the Laws of 1910, which relieves the plaintiff from showing want of contributory negligence in actions for personal injuries, and makes it a defense to be pleaded and proved by the defendant, is not retroactive.

*Greif* v. *Buffalo, L. & R. Ry. Co.*, 145 App. Div. 910, reversed.

(Argued March 21, 1912; decided April 9, 1912.)

APPEAL from a judgment entered June 26, 1911, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, overruling plaintiff's exceptions, ordered to be heard in the first instance by the Appellate Division, denying a motion for a new trial and directing judgment for defendant on the nonsuit granted at the Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William F. Lynn* for appellant. The court erred in holding that the statement in the notice that Greif was attempting to insert the pole in the socket when he received the shock made it imperative that the jury should find exactly that fact in reaching a verdict for plaintiff. (*Martin* v. *Walker*, 198 N. Y. 324; *Bertolami* v. *U. E. Co.*, 198 N. Y. 71; *Foster* v. *Crooker*, 142 App. Div. 268; *Chisholm* v. *M. Ry. Co.*, 116 App. Div. 320; *Gildersleeve* v. *Landon*, 73 N. Y. 609; *Goodyear* v.

*De La Verne,* 10 Hun, 537; *Shrady* v. *Shrady,* 42 App. Div. 9; *De Waltoff* v. *T. A. R. R. Co.,* 75 App. Div. 351.)  Assuming that Greif attempted to insert the pole when he had only been told to hold it, this did not make him guilty of contributory negligence.  (*Schultz* v. *Rohe,* 149 N. Y. 136; *Skaarup* v. *Stover,* 56 Hun, 86; *Morrisey* v. *W. E. R. Co.,* 18 App. Div. 67; *Mills* v. *Wolverton,* 9 App. Div. 84; *Stewart* v. *N. Y., O. & W. Co.,* 9 N. Y. Supp. 19; Shearman & Redfield on Neg. [4th ed.] 85.)  There was no doubt of plaintiff's right to go to the jury under the Employers' Liability Act on the questions of defendant's negligence and of Greif having received a shock of electricity.  (*McHugh* v. *M. R. R. Co.,* 179 N. Y. 378; *Guilmartin* v. *S. P. Co.,* 189 N. Y. 490; *Faith* v. *N. Y. C. & H. R. R. R. Co.,* 109 App. Div. 222; *Mikos* v. *N. Y. C. & H. R. R. R. Co.,* 118 App. Div. 536; 191 N. Y. 506; *Dwyer* v. *B. G. E. Co.,* 20 App. Div. 124.)  The burden of proof as to contributory negligence was upon the defendant.  (L. 1910, ch. 352; *Laird* v. *Carton,* 196 N. Y. 169; *Lazarus* v. *N. E. R. Co.,* 195 N. Y. 581; *Matter of Palmer,* 40 N. Y. 561; *Matter of Southwick,* 49 N. Y. 510; *Finch* v. *Carpenter,* 5 Abb. Pr. 425; *Matter of Ludlow Street,* 59 App. Div. 180; *Lyman* v. *R. T. I. Co.,* 37 App. Div. 234; *Peace* v. *Wilson,* 186 N. Y. 403.)  Assuming the burden of proof as to contributory negligence to be upon the plaintiff, the case was for the jury.  (*Braun* v. *B. G. E. Co.,* 200 N. Y. 484; *Dwyer* v. *B. G. E. Co.,* 20 App. Div. 124; *Johnson* v. *H. R. R. Co.,* 20 N. Y. 65, 73.)

*Ernest I. Edgcomb* for respondent.  There is no evidence in the case to show how the accident actually happened.  The plaintiff failed to sustain the burden of proof which rested upon her to show that this accident was occasioned by the fault of the defendant, rather than by some other cause for which the defendant was not liable.  (*Hunter* v. *N. Y., O. & W. R. R. Co.,* 116 N. Y. 615;

*Searles* v. *M. Ry. Co.*, 101 N. Y. 661; *Taylor* v. *City of Yonkers*, 105 N. Y. 202; *Ruppert* v. *B. H. R. R. Co.*, 154 N. Y. 90; *Losie* v. *D. & H. Co.*, 142 App. Div. 214; *Huff* v. *A. F. E. Co.*, 88 App. Div. 324; *Goldberg* v. *Herman*, 136 App. Div. 532; *Travell* v. *Bannerman*, 174 N. Y. 47; *Baulec* v. *N. Y. C. & H. R. R. R. Co.*, 59 N. Y. 356; *Hayes* v. *F. S. S. R. R. Co.*, 97 N. Y. 259.) Plaintiff is bound by deceased's statement, contained in the notice signed by him, and served in attempted compliance with the provisions of the Employers' Liability Act, as to how this accident occurred. (*Holmes* v. *Jones*, 121 N. Y. 461; *White* v. *Smith*, 46 N. Y. 418; *Tisdale* v. *D. & H. C. Co.*, 116 N. Y. 416; *Ballou* v. *Parsons*, 11 Hun, 602.) It appears by the allegations of the complaint, and the statement of deceased contained in the notice, served in attempted compliance with the provisions of the Employers' Liability Act, that plaintiff's intestate received the electric shock, which it is claimed threw him from the car, while performing an act which, under the undisputed evidence, was done, not only without the order but contrary to the instructions of Carr. In performing this act, deceased was a volunteer. Had he obeyed his instructions he would not have been injured. What he did was outside the scope of his employment. Plaintiff, therefore, cannot recover. (*Hickok* v. *A. L. H. & P. Co.*, 200 N. Y. 464; *Byrne* v. *N. & W. C. Co.*, 46 App. Div. 479; *Pfeffer* v. *Stein*, 26 App. Div. 535; *Sann* v. *Johns Mfg. Co.*, 16 App. Div. 252; *Mull* v. *Curtice Bros. Co.*, 74 App. Div. 561; *Gillen* v. *Rowley*, 134 Penn. St. 209.) Carr was not a superintendent within the meaning of the Employers' Liability Act, and, therefore, plaintiff failed to make out a cause of action under said act. (*McConnell* v. *M. I. W. & D. D. Co.*, 187 N. Y. 341; *Falk* v. *Havemeyer*, 123 App. Div. 657; *Bovi* v. *Hess*, 123 App. Div. 389; *McLaughlin* v. *I. St. R. R. Co.*, 101 App. Div. 134; *Abrahamson* v. *G. S. & C. Co.*, 112 App. Div. 318; *Larson* v. *B. H. R. R. Co.*, 134 App. Div. 679; *Archer* v. *Eldredge*, 204 Mass. 325.)

The burden of showing that deceased was free from contributory negligence rested upon the plaintiff, and not upon the defendant. The statute of 1910 was not retroactive. (*Bauchetti* v. *Williams Co.*, 133 N. Y. Supp. 170; *Sayre* v. *Wisner*, 8 Wend. 661; *N. Y. & O. M. R. R. Co.* v. *Van Horn*, 57 N. Y. 473; *Matter of Andersen*, 91 App. Div. 563; *Sayre* v. *Wisner*, 8 Wend. 661; *Town of Hempstead* v. *City of New York*, 52 App. Div. 182.) Plaintiff failed to show that her intestate was free from contributory negligence. (*Clancy* v. *N. Y., N. H. & H. R. R. Co.*, 201 N. Y. 235; *Griffiths* v. *L. I. R. R. Co.*, 132 N. Y. Supp. 641; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 N. Y. 330; *Bond* v. *Smith*, 113 N. Y. 378; *Zaun* v. *L. I. R. R. Co.*, 139 App. Div. 719; 201 N. Y. 599; *Goldberg* v. *Herman*, 136 App. Div. 532; *Wiwirowski* v. *L. S. & M. S. R. Co.*, 124 N. Y. 420; *Wieland* v. *D. & H. Co.*, 167 N. Y. 19; *Lamb* v. *U. Ry. Co.*, 195 N. Y. 260; *Nichols* v. *S. Mfg. Co.*, 134 App. Div. 62; *Wilson* v. *New York Mills*, 107 App. Div. 99.) This action, having been brought under the Employers' Liability Act, cannot be maintained unless the notice required by said act was given. The notice in question did not comply with the requirements of the statute, and the action, therefore, cannot be maintained. (*Finnigan* v. *N. Y. C. Co.*, 194 N. Y. 244; *Simpson* v. *Foundation Co.*, 201 N. Y. 479; *Miller* v. *S. P. Co.*, 109 App. Div. 135; *Barry* v. *D. D. Co.*, 121 App. Div. 810; *Palmieri* v. *Pearson & Son, Inc.*, 128 App. Div. 231; *Galino* v. *F. R. & C. Co.*, 130 App. Div. 605.)

HAIGHT, J. This action was brought under the Employers' Liability Act to recover damages arising from the death of plaintiff's husband, Frederick Greif, an employee of the defendant, resulting from a fall from the top of one of defendant's cars on the 19th day of January, 1909. The plaintiff's intestate entered the employ of the defendant in September, 1908, and for sev-

eral weeks prior to the accident he had been assigned to duty as night watchman, car cleaner, janitor of the offices and occasional helper of Otis J. Carr, the car inspector, whenever he needed assistance in making minor or temporary repairs. The accident happened at the defendant's car barn in the town of Gates, in which the cars not in use were stored during the night and were cleaned, inspected, and, if needed, minor temporary repairs were made. For the purpose of running cars out and into the barn a trolley wire had been provided guarded by an overhead board twelve or fourteen inches wide, running lengthwise of the wire with pieces on either side forming an inverted trough. Between eleven and twelve o'clock on the evening of the accident a car was run into the barn, having a trolley pole on each end of the car, one of which was bent so as to require a new pole. Carr, the inspector, called decedent's attention to the fact and said that they would have to put in a new pole and told him to go upon the roof of the car and take the old pole out while he went to get a new one. Thereupon decedent climbed to the top of the car, took the old pole out and threw it to the ground. Carr returned with the new pole, placed it against the car, climbed to the top and pulled the pole up after him and laid it across the board on top of the trolley wire and told decedent to hold it. Carr then turned to light a cigarette that he was smoking and as he again turned to look at decedent he saw him in the act of falling backwards from the top of the car, carrying the pole with him. In striking upon the ground his spine was injured, producing paralysis, which resulted in his death on the 16th day of March thereafter. After the decedent fell it was discovered that his hands were burned and blistered and that there was another burn across his neck.

Prather was the master mechanic of the defendant in charge of the barn and repair shop and employed Carr as his night inspector, whose duties were to take charge of

the barn during the night, look after the cleaning of the cars and making minor temporary repairs. At the entrance of the barn there was a switch, by which the electricity could be turned on or off from the trolley wire, which was also in charge of Carr. The master mechanic also employed the decedent and took him to the barn and told Carr that he would help him nights in cleaning and making repairs. Prather, the master mechanic, was not at the barn nights, but during that time Carr was left in charge. On several occasions he had called upon the decedent to help him clean trolley bases, and on each of those occasions the electricity was turned off before doing the work. On the night in question, however, the electricity had not been turned off from the trolley wire and the car was what was known as a live car. Neither Carr nor the master mechanic had ever given decedent any instructions in regard to danger from electricity.

It is now contended that the notice given to the employer of the intention to bring an action under the Employers' Liability Act was defective and insufficient in law; that it failed to state that the plaintiff's intestate exercised due care; that it did not sufficiently state the cause of the injury, and that it did not state the particulars in which the defendant was negligent. The notice was given by the decedent in his lifetime, was addressed to the defendant and stated:

"You will please take notice, that on the 19th day of January, 1909, about 11 o'clock P. M., while I was in your employ as watchman and helper at your car barn and repair shop, situate in the Town of Gates, west of the City of Rochester, I was injured by falling from the top of a car which was at the time standing in said barn for repairs. The said car was brought into the barn with a damaged trolley pole, and the repairs consisted in taking out that trolley pole and inserting another. The car was run into the barn on a track having a trolley wire over it, and I was sent to the top of the car to make the

change of trolley poles. The power, or electric current, is supposed to be turned off from the trolley wire in said barn and from said car at such a time when repairs are taking place. After the old trolley pole was removed, and while I was standing on the top of the car, a new trolley pole was handed to me, and as I attempted to insert it in the socket it touched the trolley wire and I received a shock of electricity, which threw me to the ground, injuring my spine so that I am paralyzed and helpless."

The statute provides that "no action for recovery of compensation for injury or death under this article shall be maintained unless notice of the time, place and cause of the injury is given to the employer." (Labor Law [Cons. Laws, ch. 31], § 201.)

Upon referring to the notice it appears that each of the requirements of the statute has been fully complied with, the time and place are given, and that the fall from the car was caused from the shock of electricity which the decedent received while he was attempting to insert the new pole in the socket, and that the fall produced the injury to his spine and paralysis. The provisions of such notice have previously been under consideration in this court, and under our recent decisions we entertain the view that this notice was sufficient. (*Bertolami* v. *United Engrg. & C. Co.*, 198 N. Y. 71; *Martin* v. *Walker & W. Mfg. Co.*, Id. 324, 329; *Smith* v. *Milliken Brothers, Inc.*, 200 N. Y. 21, 24.)

Under the provisions of the statute it is provided that when personal injury is received by an employee, who is himself in the exercise of due care and diligence, by reason of the negligence of any person in the service of the employer intrusted with and exercising superintendence, whose sole or principal duty is that of superintendence, *or in the absence of such superintendent of any person acting as superintendent with the authority or consent of such employer,* an action may be maintained

against such employer for the damages sustained, etc. In this case the evidence tends to show that Prather, the master mechanic, was in charge of the car barn and shop, who employed the workmen therein and that they worked under his order and direction; that he employed Carr, the inspector, as well as Greif, the plaintiff's intestate, and that during nights Carr was placed in charge of the barn and shop in the absence of the master mechanic, and that Greif was performing the duties of night watchman, cleaner, etc., with directions to assist Carr when he so required. This evidence we regard as sufficient to raise a question of fact for the jury for its determination as to whether or not Carr, during the nights in the absence of the master mechanic, the superintendent, was acting as such superintendent with the authority or consent of the employer; and if the jury should find that he was so acting at the time of the accident then his negligence, if any, would become the negligence of the master and not that of a co-employee.

The complaint charges numerous acts of negligence on the part of the defendant, among which are the charges that the plaintiff's intestate was unfamiliar with electricity and electrical apparatuses and that neither the master mechanic, nor Carr, had instructed him with reference to the dangers of the work and that Carr had neglected on the occasion in question to turn off the electricity from the trolley wire before attempting to replace the new pole. If, therefore, Carr was acting as superintendent at the time and the injuries received by Greif were the result of Carr's negligence, it would follow that such injuries resulted from the negligence of the defendant.

The courts below evidently entertained the view that the plaintiff had failed to show the cause of the accident to Greif and his freedom from contributory negligence, the contention being that the evidence does not show how he received the shock, and that if it was received in the

manner stated in Greif's notice it was owing to his own voluntary act, for which the defendant was not responsible. It must be conceded that the evidence upon this branch of the case is somewhat meager. Greif being dead, the only witness who could testify upon the subject was Carr. He, as we have seen, called Greif to assist him in putting in a new trolley pole upon the top of the car and had told Greif to climb on to the top of the car and take the old pole out. This Greif had done and thrown the old pole on to the ground; Carr had arrived with the new pole and had himself climbed on to the top of the car and laid the pole across the board that was over the trolley wire, directing Greif to hold it while Carr lighted a cigarette. The next thing that Carr saw was Greif falling backwards from the car with the trolley pole in his hands, and when Greif was picked up from the ground it was found that his hands and neck were burned and that they were not burned before the accident. It is apparent, therefore, that Greif had raised the pole from the trolley board and had it in his hands. He was there to help Carr insert the new pole into the trolley socket on top of the car, the place from which he had taken the old pole. The pole was of metal, the car was a live car; it had two trolley poles, one on either end. It had been run into the barn by means of the other pole, the pole that was removed having become bent and useless. It does not appear that the pole from which the car had been run into the barn had been pulled down or removed from the trolley wire. The trolley wire was charged with electricity, it not having been turned off by the switch provided for that purpose. Of course, it appears from the notice that Greif had signed before his death that he had taken the pole and inserted it in the socket and that the other end of the pole came in contact with the trolley wire, which formed a circuit and caused the shock, but we cannot consider this statement as evidence in the case. The fact, however, exists that he did

receive a shock, or else his hands would not have been burned, and that that shock necessarily must have been produced by bringing the two ends of the pole which he had in his hands in contact with the trolley wire and some part of the metal upon the car. But it is contended that, if he took the pole from the top of the trolley board he did so voluntarily and not by directions of Carr, who merely told him to hold it. But he was there to assist Carr in putting in the new pole, which he was holding by direction of Carr. He had just removed the old pole and might well have understood that the new pole was handed to him to insert in the place from which he had removed the old pole. On every other occasion on which he had been called upon to work upon the car, cleaning the trolley car, the electricity had been turned off from the trolley wire and he had not been advised that it had not on this occasion. We are, therefore, of the opinion that it cannot be held as a matter of law that Greif was guilty of contributory negligence, nor that there was such a failure on the part of the plaintiff to prove the cause of the shock which produced the accident as to justify a nonsuit.

The conclusion reached by us is independent of the amendment of the Labor Law, known as section 202a, added thereto by chapter 352 of the Laws of 1910, which relieves the plaintiff from showing want of contributory negligence in actions for personal injuries, and makes it a defense to be pleaded and proved by the defendant. But inasmuch as the question may be again raised upon the new trial we have thought it wise to state that we do not understand the provisions of that act to be retroactive.

The judgment should be reversed and a new trial ordered, with costs to abide the event,

CULLEN, Ch. J. I vote for the reversal of the judgment below and concur in the opinion of Judge HAIGHT,

so far as relates to the alleged contributory negligence of plaintiff's intestate, and without considering the question whether Otis J. Carr, the car inspector, was a person whose sole or principal duties were that of superintendence within the statute, I am of opinion that the evidence presented a question of defendant's liability at common law to be determined by the jury. If Carr had, on this occasion only, or on other isolated occasions failed to cut off the electric current when he called on deceased to go to the top of the car and assist him, it would have been the negligence of a fellow-servant in a detail of the work unless Carr was a superintendent, within the Employers' Liability Act. But Carr himself testifies that he was not accustomed to turn off the power when a change was to be made of the trolley pole. I think the jury might find that this was a negligent manner of conducting the work. The learned counsel for respondent contends that "It is impossible to see how deceased could have received any shock." Nevertheless, I think it is certain that the deceased did receive an electric shock. The burns proved that conclusively. If the state of knowledge was such that a person could receive a shock in the position that the deceased was, while the experts were unable to determine how it was possible that the person should receive a shock, the jury might very well find that it was an unsafe and negligent manner of conducting the work not to cut off the electric current, which could have been readily done. For the adoption of an unsafe and negligent method of conducting the work the defendant would be liable. In *Doing* v. *N. Y., Ontario & Western Ry. Co.* (151 N. Y. 579) it was said: "We will assume then, what cannot be questioned, that the workmen were doing the defendant's work in a dangerous and reckless manner. But these workmen were doing nothing but what, according to the testimony, they had been doing for years before. If the defendant permitted its employees to carry on its opera-

tions upon those three tracks outside the shop in such a manner as to endanger the lives of those inside, who could not protect themselves, it failed to discharge to the deceased the duty which the law imposed upon it of furnishing him a reasonably safe place to do his work." (p. 583.) This was quoted with approval in *Dowd* v. *N. Y., Ontario & Western Ry. Co.* (170 N. Y. 459). It was said by the court in *O'Brien* v. *Buffalo Furnace Company* (183 N. Y. 317): "It is the duty of the master to use reasonable care to so conduct his business as not to subject servants to unnecessary danger in the prosecution of their work." (p. 321.) In this case the jury might find that the duty had not been performed.

Vann and Chase, JJ., concur with Haight, J.; Collin, J., concurs with Cullen, Ch. J.; Willard Bartlett, J., concurs with Haight, J., and Cullen, Ch. J.; Hiscock, J., not sitting.

Judgment reversed, etc.