(155 App. Div. 461.)

## CLOKE v. PITTSBURG CONTRACTING CO.

(Supreme Court, Appellate Division, Second Department. February 21, 1913.)

1. MASTER AND SERVANT (§ 265*)—CONTRIBUTORY NEGLIGENCE—PERSONAL IN-
JURIES—BURDEN OF PROOF.

In an action for personal injuries, under Employer's Liability Act
(Consol. Laws 1909, c. 31, §§ 200–212, as amended by Laws 1910, c. 352,
the burden is on the defendant to show contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–
908, 955; Dec. Dig. § 265.*]

2. MASTER AND SERVANT (§ 281*)—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

In an action by a servant for personal injuries from being run over
by a car carrying a crane on a railway used by the defendant as in-
cidental to its work, evidence held to show that plaintiff was guilty
of contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 987–
996; Dec. Dig. § 281.*]

Hirschberg, J., dissenting.

Appeal from Trial Term, Westchester County.

Action by Samuel Cloke, by William H. Cloke, his guardian ad litem,
against the Pittsburg Contracting Company. Judgment for plaintiff,
and defendant appeals. Reversed.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS,
CARR, and RICH, JJ.

John Ambrose Goodwin, of White Plains, for appellant.
Don R. Almy, of New York City, for respondent.

JENKS, P. J. The action for negligence is brought under the Em-
ployer's Liability Act (Consol. Laws 1909, c. 31, §§ 200–212) as amend-
ed by chapter 352 of the Laws of 1910.

I am not clear that the proof sufficed to justify a finding of negli-
gence. But my advice to my Associates does not require a determina-
tion of that question, and in view of a new trial I think it unwise to
indicate my opinion as to the shortcomings in the proof of negligence,
for though the counsel be as reputable as is he who argues this appeal
for the respondent, and none is more so, the practice of pointing out
the defects of proof upon an issue which is not necessarily discussed
in a determination by an appellate court may be, and I fear often is,
an invitation and a temptation to witnesses to supply the defects, be-
yond the truth as they know it, upon the new trial. This is a general
reflection without intention of specific application to the case at bar.

I think that the judgment should not stand because the verdict is
contrary to the evidence upon the issue of contributory negligence
pleaded by the defendant. The defendant maintained and worked a
railway incidental to its labor upon an aqueduct, in order to move its
cranes and cars from time to time. The plaintiff, 17 years old, had
served for two months in the night as a coal boy, carrying coal from
a coal box constructed near these tracks. About 3:30 a. m. of June
27, 1911, the wheels of a moving car bearing a crane ran over his left
leg and severed his foot. The negligence charged is the running of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

locomotive crane without light or signal, improper location and maintenance of the coal box, and failure to furnish a safe place to work. The notice served by the plaintiff charges also that the coal box was inadequate, worn out, and out of repair, in that it had given way, scattering coal over the ground, so that the plaintiff was obliged to go upon the tracks to get the coal.

There is no doubt that previous to the accident the plaintiff took a position which brought his left leg over the nearer rail of the track. At first he avowed ignorance whether this was the fact, but after he was pressed he answered the court itself, "It must have been." There is no proof that his master's business required or justified such an attitude. The engineer's plan of the locality, read in evidence without criticism, shows that the opening of the coal box was 4.14 feet distant from the rail. This is more reliable than the mere estimates of the plaintiff's witnesses, which made the space somewhat less. The plaintiff testifies that at the time of the accident he was picking up coal; "I was picking up coal alongside the railroad track." But there is no proof that he was ordered to do this, and no proof that he had any reason to suppose that he should do this in the discharge of his duty. He himself testifies that he was directed to get the coal out of the coal box and that on the night in question the box was full. Indeed, his witness Fox testifies that, while there was a little coal in front of the box, there was none between the edge of the box and the track. But if he was picking up coal alongside the railroad track, why should he, when about that work, have been lying down, as he testifies, with his right foot under him and one foot sticking out not straight, but extended over the rail? He surely was not required to take such a position. But on cross-examination he says that he was starting to pick up coal, that he had not picked up any but was looking for lumps of coal to put in his bag, that he had to dig down to get them, and that he was digging in the coal box right opposite the rail. It is not easy to picture the attitude of a person digging in the coal box while lying down with his right foot under him, with his left leg sticking out but not straight, so that it extended over the rail 4.14 feet distant. But even if this attitude was assumed, there is not the slightest proof that it was necessary or justifiable. It may be noted also that his witness Fox testifies that he did not have to dig down that night to get large lumps of coal, for they were on top.

It is hard to believe that the plaintiff was not conscious that his foot lay across the rail. If he had thrust out his leg along the ground, it would naturally have encountered the rail. If he had raised up his leg to bring it down to rest, it would seem he must have felt that it rested upon the rail and not the ground. He knew perfectly well the relative location of coal box and of track. He testifies that he had been warned by his employer that he must be watchful for passing cranes and cars, and that on that very night he knew that it was "a dangerous position." He had seen the cranes that night. He knew that they were moved in the night, sometimes bearing lights and sometimes not bearing them. The crane that caused his accident itself

was going very slowly, according to the testimony of Bayes, the engineer, who was called as a witness for the plaintiff.

The plaintiff is not supported by any witness as to his own conduct, and his testimony is not to be considered merely by the criterion of credibility. The defendant called Simpson, the fireman on the crane, who testified that he saw "something white," and, when he saw that the "something" was the plaintiff, the witness jumped from the crane and took him up. He testifies that the door of the fire box was open, and that he saw the plaintiff lying on his side, with one foot over the track. He testifies that, after he took the plaintiff up, the plaintiff did not know he was hurt, but was crying, and said, "Don't tell Bill Griff (the name of the foreman) I was asleep or he'll fire me." Dr. Emery, the physician in charge of the defendant's hospital, testifies that, when the plaintiff came to the hospital that night, he asked the plaintiff how the accident happened, and the plaintiff answered that "he went to sleep alongside of the coal box." Emma Rowell, the owner and proprietor of a sanitarium to which the plaintiff was brought directly after the accident, testifies that she asked him how it had happened, and he said that he had been suffering from diarrhea for a couple of days, one of his fellows had given to him blackberry brandy, which he was not accustomed to take, that it made him feel dizzy so he wanted to get somewhere where he could lie down and go to sleep; that he went where there was a bank of coal and laid up against it; that his foot was not out of the way of the track; and that there was a dummy engine or something of that kind, which the witness did not quite understand, that cut off his foot while he was sleeping.

[1, 2] It is quite true, as urged by the learned counsel for the appellant, that contributory negligence was a defense to be both pleaded and proved by the defendant (Greif v. Buffalo, L. & R. Ry. Co., 205 N. Y. 249, 98 N. E. 462), and that therefore the burden upon that issue was upon the defendant; but I think that the defendant upheld that burden, and therefore I advise reversal of the judgment and of the order, and the granting of a new trial, costs to abide the event.

THOMAS, CARR, and RICH, JJ., concur.   HIRSCHBERG, J., dissents.